# THE UNITED RAILWAYS AND ELECTRIC CO. *vs.* CHARLES E. BIEDLER.

*Negligence of Driver of Vehicle Not Imputed to Passenger—Contributory Negligence of Passenger—Collision of Street Car With Vehicle.*

Plaintiff was being driven by his brother in the latter's buggy when, upon approaching a cross street where there were the tracks of defendant's electric railway, he saw his brother lean forward, beyond the curtains of the buggy, to see if a car was coming and then give rein to his horse. When the driver so looked he had a view of the tracks for forty or fifty feet. Before getting across the vehicle was struck by a car running at a high rate of speed and plaintiff was thrown out. In an action to re-

cover damages for the injury so caused, *held*, that the contributory negligence of the driver of the buggy, if there was any, cannot be imputed to the plaintiff.

*Held*, further, that since the plaintiff knew that his brother was a skillful driver, and that his horse was gentle, and saw him look out for cars when he came to the crossing, there is no evidence of any contributory negligence on the part of the plaintiff.

Appeal from the Superior Court of Baltimore City (Wright, J.) where there was a verdict and judgment for the plaintiff for $1,750.

*Plaiutiff's 2nd Prayer.*—That if the jury find that at the time of the accident the car in question was being driven at a greater rate of speed than six miles an hour at the crossing of 23rd and St. Paul street (if the jury find the accident occurred at said crossing) in violation of an ordinance of the Mayor and City Council, and shall further find that if the said car had not been running at a greater rate of speed than six miles an hour the accident could have been avoided, then there was a want of ordinary care on the part of the defendant, as mentioned in the plaintiff's first prayer.  (*Granted.*)

*Plaintiff's 3rd Prayer.*—That if they find the facts set forth in the plaintiff's first prayer, and further find that at the time of the accident therein referred to, the plaintiff was an invited guest in said buggy, and that he exercised no control over the driving and the management of the same, but that the said buggy and horse drawing the same was owned by the witness, Dr. H. H. Biedler, and that the said Dr. Biedler was driving and controlling said buggy, that even if they find that the said Dr. Biedler was guilty of negligence in the manner in which he managed and drove said horse and buggy, which contributed to the happening of the accident, that as a matter of law the negligence of Dr. Biedler cannot be imputed to the plaintiff and forms no bar to the right of recovery of the plaintiff in this case against the defendant; and further that there is no evidence in this case legally sufficient to show any negligence on the part of the plaintiff, directly contributing to the happening of the injury complained of.  (*Granted.*)

*Defendant's 10th Prayer.*—That if the jury believe the car of the defendant was not proceeding over six miles an hour, and that the motorman while exercising due care had no reason to believe that Dr. H. H. Biedler, who was driving the carriage in which the plaintiff, Charles E. Biedler, was riding, intended to drive acoss in front of his car until the carriage was so close to the car that the collision could not have been avoided by the motorman by the exercise of an ordinary degree of care, then the defendant is not responsible for the accident, and the verdict must be for the defendant. (*Granted as modified.*)

*Defendant's 11th Prayer.*—That if the jury believe the plaintiff in this case, Charles E. Biedler, could have seen the approaching car and could have warned the driver of the carriage, namely, Dr. H. H. Biedler, in time to have avoided the collision, then the verdict must be for the defendant. (*Rejected.*

*Defendant's 12th Prayer.*—That if the jury believe that immediately before the said carriage was struck by the car of the defendant, either the plaintiff or his brother, Dr. H. H. Biedler, could have avoided the accident by the exercise of due care on the part of either, then their verdict must be for the defendant. (*Rejected.*)

*Defendant's 13th Prayer.*—That it was the duty of the driver of the carriage in which plaintiff was driving, to look for approaching cars before he attempted to cross the defendant's tracks, and if the jury believe that the said Dr. Biedler attempted to cross in front of the defendant's car without observing that the car was too close to him to make the attempt in safety, and shall further find that either Dr. Biedler or the plaintiff in this case, Charles E. Biedler, could have seen the approaching car in time to have avoided the accident complained of, then their verdict must be for the defendant. (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*M. Ernest Jenkins* and *B. Howell Griswold, Jr.*, for the appellant.

The plaintiff is being driven in a city in which he has been a resident for thirty years, and is fairly presumed to be familiar with the neighborhood ; his brother testifies that he knew the cars ran rapidly at this point.   In broad daylight he sees the track and knows he is approaching a railway crossing, and notes that his brother looks for a car.   He testifies *of his own knowledge* that the buggy was fifteen feet back of the building line of the street on which the cars ran when the driver leaned forward to look out.   He, of course, must have noted this fact at the time.   A man of ordinary sense knows that from this position the driver could not see more than forty or fifty feet up the track, and the driver so testified.

Notwithstanding this fact, neither occupant of the buggy looks again, and the buggy is driven with blinds down directly on the track.   The driver does not look out again.   The plaintiff makes no pretense of looking at any time, although by leaning forward or turning his head and looking through the glass beside him he could see "as far as the eye could reach," in the direction from which the car was coming ; "nothing to obstruct the view."   The buggy is fifty-five feet from the south-bound track, when the driver last looks out; from there on no precaution is taken ; but the buggy is driven, at the rate of five or six miles an hour, straight upon the track. It is a rainy day, and every one familiar with street car operation, knows the difficulty of stopping a car with what is known as a "gummy track."

Whilst these facts may not be contributory negligence, *per se*, on the part of the plaintiff, it is decidedly more than a "scintilla" of evidence of negligence, and it was for the jury to say whether or not the plaintiff himself had acted as an ordinarily cautious and prudent man.   In fact, there can be small doubt in this case that if the plaintiff had merely taken the trouble to turn his head before being driven upon the track, that the accident would have been averted.

The question is not an academic one, nor are the plaintiff's

acts vested with any sanctity by reason of the fact that he was being driven instead of driving. The distinction is clear that even if the driver's negligence is not imputable to the plaintiff, his *own* negligence certainly is.

In New York (*Brickell* v. *N. Y. C. & H. R. R. Co.*, 120 N. Y. 290), and Pennsylvania (*Dean* v. *Penna. R. R.*, 129 Pa. St. 514), the Courts hold in similar cases that such evidence establishes the plaintiff's negligence as a matter of law.

In Maryland the appellant contends that if it is not negligence *per se*, at all events the action of the plaintiff is to be passed upon by the jury. The appellee's contention apparently is that it is not a matter for either Court or jury, but that a man may be driven in a carriage directly in front of a car, and once he shows he is a passenger, then the law throws around him special privileges, and says none of his *own* acts *can* constitute negligence.

The appellee's prayer seems to have been based upon a misconception of the Hogeland and Strunz cases in Maryland. An examination of these two cases, however, shows that the Court expressly recognizes the appellant's contention, and while instructing the jury that the *driver's negligence* was not to be imputed to the plaintiff, still left to the jury the question of the plaintiff's *own* negligence.

In *R. R. Co.* v. *Kutac*, 72 Tex. 651, a wife was driving with her husband as driver, and was killed by a collision with a train. Evidence showed she or her husband might have seen the engine in time to avoid accident, had she looked. *Held:* Although the husband's negligence cannot be imputed to wife, the circumstances were such as to require ordinary care on her part. The driver's negligence would not relieve her of this. Otherwise, the result would be that in this case a recovery is had in the absence, whatever of ordinary care on her part. What degree of care she should have used, was a question for the jury. The fact that "she neither assisted, advised nor controlled the driver" is no proper test of want of ordinary care.

In *Farley* v. *W. & N. Elec. Ry. Co.*, 52 Atl. Rep. 543.

Plaintiff's wife was killed by a trolley car while riding as a gratuitous passenger with one who owned the carriage, which was under the owner's managemant and control. Defendant claimed accident was caused by plaintiff's wife not looking and listening. *Held:* Although driver's negligence cannot be imputed to wife, yet she, as a passenger, was bound to use due care and caution as well as the driver.

The Court instructed the jury, therefore, that if wife's negligence contributed in any way approximately to the happening of the accident, plaintiff could not recover. *Carr* v. *City of Easton*, 142 Pa. St. 139; *Crescent Tp.* v. *Anderson*, 114 Pa. St. 643; *City of Vincennes* v. *Thuis and wife*, 63 N. E. R. 315: *Hoag* v. *N. Y. C. and H. R. R. Co.*, 111 N. Y. 199; *R. R.* v. *Boyts*, 45 N. E. R. 812; *Smith* v. *Railway*, 87 Me. 339; *Brickell* v. *Railway*, 120 N. Y. 290; *Bush* v. *U. P. R. R.*, 64 Pac. Rep. 624.

It is submitted, that the facts of the present case suggest in themselves such a glaring act of recklessness on the part of the plaintiff himself, that if the case were sent back for new trial, a prayer instructing the jury to that effect should be granted, and therefore a new trial should not be awarded. *Consol. Ry. Co.* v. *O'Dea*, 91 Md. 515.

*Vernon Cook*, (with whom were *Gans & Haman* and *Stuart S. Janney* on the brief), for the appellee.

Not satisfied with the plain and unambiguous expression of this Court in *Hogeland's case*, 66 Md. 149, the Baltimore and Ohio Railroad Company brought a similar case before it with the evident hope that this Court "review and modify its decision," pronounced in the prior case. We refer to the case of *Strunz*, 79 Md. 335. The appellant there contended that a distinction should be made as follows:

"The appellant contends, first, that the decision in the *Hogeland case* should be so limited that a guest who is riding in the front of an open private vehicle, who is thoroughly familiar with the road and has every opportunity to see, and is aware that the vehicle is approaching a dangerous place, such as a

railroad crossing, should be held responsible if he permits the driver to neglect any of the ordinary rules of care of looking and listening and perhaps stopping, if the view is obstructed, whereby an accident happens. *Second*, that the reference of the question of the safety of crossing from the place where the view of the track was obstructed, by Schneider to Strunz, and the latter's assent to the conclusion of the former that it was 'all right,' made Strunz a party to the act, and a participant in the control of the vehicle to such an extent that he would be included in the exception noted in the *Hogeland case*."

The railroad company thus sought to have the driver's negligence imputed to the passenger because the passenger was familiar with the danger of the crossing, and though seated in a front seat, and with unobstructed view, actively assented to the driver's act by ejaculating "hun hah," when asked if it was not all right to cross.

This Court, however, dismissed the contention as without merit, pertinently remarking that "if Strunz had plainly noted his dissent he was not the owner nor in control of the horse and wagon and in no position to restrain the action of Schneider." And in order to settle the question for all time in this State, the Court branded the proposition of imputed negligence in such cases as "erroneously unjust and inconsistent with other recognized propositions of law," concluding the discussion with the following statement: "But whatever conflict may be found to exist in the decisions relating to this subject, the decided weight of authority is in favor of the view heretofore expressed by this Court; and upon further reflection and consideration, we are of the opinion that the doctrine announced in the *Hogeland case* is just and reasonable and based upon sound principles of law, which in a case such as we are now considering ought not to be modified or disturbed."

The plaintiff's third prayer is taken almost literally from the plaintiff's second prayer in the Strunz case, which prayer was there affirmed, with the addition, in this case, of a clause to the effect that there is no evidence in the case legally sufficient

to show negligence on the part of the plaintiff directly contributing to the happening of the injury complained of.

SCHMUCKER, J., delivered the opinion of the Court.

The question presented by this case is a narrow one. The appeal is from a judgment recovered by the appellee against the appellant in the Superior Court of Baltimore City for damages for injuries caused by a collision between a carriage in which he was riding and one of the appellants electric cars.

It is admitted in the record and on the briefs of counsel that there is evidence in the case legally sufficieut to establish the existence of negligence on the part of the defendant, in running the car at too high a speed, which directly contributed to the plaintiff's injury. The plaintiff was therefore entitled to recover in the case unless he was debarred therefrom by contributory negligence on his part or on the part of some one for whose negligence he was responsible. The single question presented for our determination is whether the record contains evidence legally sufficient to prove the existence of any such contributory negligence.

The material facts as they appear from the record are as follows: On May 25th, 1901, the appellee upon the invitation of his brother, Dr. H. H. Biedler, rode with the latter in his buggy upon his round of professional visits in Baltimore City. The doctor was an experienced driver and quite familiar with the locality of the accident and his horse was a quiet one. The horse and buggy which he drove were his own property and the appellee was merely his guest and had nothing whatever to do with the management of the horse or vehicle.

At the time of the collision with the car the buggy was going west along the north side of Twenty-third street toward St. Paul street. The doctor, who was driving, sat on the right side of the buggy and the appellee on the left side. As they approached St. Paul street, on which the cars of the appellant run, and when they were about fifteen feet from the building line of its east side the doctor checked his horse and leaned forward beyond the side curtain of the buggy to see, as he

testified, if any car were in sight but he neither saw nor heard any in either direction.    From the point at which he thus looked he could have seen a car approaching from the north on the south-bound track on St. Paul street about forty or fifty feet before it reached the north side of Twenty-third street. Not seeing or hearing any car he gave his horse a free rein and started to cross St. Paul street, but before he succeeded in getting across the horse and buggy were struck by a car, running very rapidly southerly on the south-bound track, and were dragged to a point about twenty-feet south of Twenty-third street and the appellee was injured.

The doctor, the appellee, and an eye witness of the collision, who was standing at the corner of the two streets when it occurred, all testified that they heard no gong ring on the approaching car, although each of them thought he would have heard it if it had been rung.    The appellee further testified that he saw his brother as they neared St. Paul street, check his horse and lean forward in his buggy and look out for the cars before he started to cross, and further that the first warning they had of the approach of the car was a cry from some one to "look out" and that the crash of the collision came almost simultaneously with the cry.

Another eye witness of the collision who at the time was standing on the west side of St. Paul street a short distance north of the corner testified that he heard the gong ring on the car when it was about fifty feet north of Twenty-third street and that the buggy was then in sight coming out of Twenty-third street, and that the motorman was turning the brake endeavoring to stop the car, but did not succeed in doing so until it had reached the steps of the second house south of Twenty-third street.

After the evidence was all in the appellee, as plaintiff, offered four, and the defendant offered thirteen prayers.    The Court granted all of the plaintiff's prayers and eight of the defendants and rejected its remaining five prayers.    The plaintiff's third prayer which took the defense of contributory negligence on the part of the plaintiff out of the case, presents the

real issue in controversy and it formed the basis of the entire argument before this Court.    That prayer is as follows: The Court at the plaintiff's request instructs the jury that if they find the facts set forth in the plaintiff's first prayer, and further find that at the time of the accident therein referred to, the plaintiff was an invited guest in said buggy, and that he exercised no control over the driving and the management of the same, but that the said buggy and horse drawing the same was owned by the witness, Dr. H. H. Biedler, and that the said Dr. Biedler was driving and controlling said buggy, that even if they find that the said Dr. Biedler was guilty of negligence in the manner in which he managed and drove said horse and buggy, which contributed to the happening of the accident, that as a matter of law the negligence of Dr. Biedler cannot be imputed to the plaintiff and forms no bar to the right of recovery of the plaintiff in this case against the defendant; and further that there is no evidence in this case legally sufficient to show any negligence on the part of the plaintiff, directly contributing to the happening of the injury complained of.

The first proposition asserted by this prayer is that the contributory negligence, if any there were, on the part of Dr. Biedler, the owner and driver of the buggy at the time of the accident cannot be so imputed to the appellee, who was a mere passenger, as to afford to the defendant an excuse or defense for an injury to him caused by its negligence.    The rejection made by this prayer of the doctrine of imputed negligence in cases like the one now under consideration is in entire accord with the previous decisions of this Court.    In the case of the *P. W. & B. R. Co.* v. *Hogeland*, 66 Md. 149, the plaintiff by invitation of her brother-in-law was riding with him in a carriage which together with the horse that drew it were hired by him and were under his exclusive control and direction.    The carriage was struck by a passing train when attempting to cross a railroad track and she was injured by the collision. She sued the railroad company for damages sustained by reason of her injury and in the course of the trial the Court

rejected several prayers offered by the defendant denying the right of the plaintiff to recover if the jury found that Richardson, the driver of the carriage, had been guilty of negligence directly contributing to the happening of her injury. This Court on an appeal affirmed the action of the lower Court in rejecting the prayers and after a careful and thorough discussion of the whole doctrine of imputed negligence and an examination of the authorities on the subject held that the negligence of the driver could not be imputed to the plaintiff who was, as was the present plaintiff, a mere passenger without direction or control over the carriage or its driver.

In the case of *Balto. & Ohio R. R. Co.* v. *Strunz*, 79 Md. 335, this Court was asked by the appellant to modify the doctrine laid down in *Hogeland's case*, but it refused to do so saying "It is the generally accepted doctrine of the Courts of this country that the contributory negligence of a carrier or the driver of a public or private vehicle not owned or controlled by the passenger and who is himself without fault will not constitute a bar to the right of the passenger to recover for injuries received. The only principle upon which such contributory negligence could bar the right of recovery is that the driver should be regarded as the agent or servant of the passenger." There is no ground for holding the appellee in the present case to have been the principal or master for it is conceded that he was the mere guest of his brother who owned and controlled both the horse and buggy at the time of the accident.

Nor do we think that there is any evidence in the record from which a fair mind could reasonably infer that the appellee was himself guilty of any want of such care as could reasonably have been expected of a person of ordinary prudence under the circumstances of the case. He knew that his brother was a skillful and experienced driver who had for many years been traversing the streets of Baltimore in just such a vehicle as that in which they were then driving. He saw his brother check his horse as they approached the crossing of St. Paul street and lean forward beyond the side cur-

tain and look and listen and then proceed to make the crossing. From the position in which the appellee sat on the south side of the buggy he could not have seen through the small light in the curtain of the buggy on the north side from which the car was approaching, for his brother sat between him and that light. Even if he had been warned of the approach of the car there is no evidence that he could have escaped from the buggy in time to save himself. At the rate at which the buggy was going, but a few seconds must have elapsed, after he saw his brother who was in charge of the vehicle check his horse and look and listen for a car, before the swiftly approaching car struck them. For him to have attempted at such a juncture to interfere with the driver of the vehicle would have laid him open to the charge of negligence rather than of care. He did not own or control the horse or vehicle and there is no evidence from which it can be reasonably inferred that he could in those few seconds have successfully checked his brother from attempting the crossing which the latter after having checked his horse and looked and listened thought he could safely make. Under these circumstances we are of opinion that no error was committed by the learned Judge below in granting the plaintiff's third prayer.

The appellant in the argument of the case made no serious objection to the action of the Court below upon the other prayers nor do we upon an inspection of the record find any error in such action and we will therefore affirm the judgment appealed from.

*Judgment affirmed with costs.*

(Decided January 20th, 1904.)