UNITED RAILWAYS AND ELECTRIC COMPANY
*vs.* REBECCA KOLKEN.

*Accident at Street Railway Crossing—Contributory Negligence—Failure to Avoid Injury After Seeing Plaintiff's Peril—Sufficiency of Evidence—Instructions.*

Even if a plaintiff was guilty of contributory negligence in attempting to cross a street in front of an approaching electrict car, he is nevertheless entitled to recover damages for an injury caused by collision with it, if the motorman could, by the exercise of due care, have avoided the accident after he saw, or, by the exercise of proper care, might have seen, the plaintiff as he was about to cross the tracks.

In the application of this rule, it makes no difference whether the plaintiff's negligence consisted of venturing to cross the street without looking to see if a car was coming or in attempting to cross after seeing an approaching car. .

In the running of electric cars on city streets, a motorman is required to anticipate the conduct of pedestrians crossing the streets to the extent of keeping a sharp lookout. giving proper warning and reducing the speed of the car so as to have it under control for the purpose of avoiding injury to those who may be on the crossing.

In an action to recover damages for an injury caused by plaintiff's being struck by defendant's street railway car at a street crossing, the plaintiff's evidence was to the effect

that as she was about to start across a street on which were defendant's tracks, at a corner crossing, she saw a car coming slowly, which was then about two hundred feet distant; that the view was unobstructed and she started across without looking again, and was struck when she reached the track, thrown on the fender and carried for some distance before being thrown off. Other witnesses testified that the speed of the car was increased as it approached the crossing, and when it reached there was going at full speed; that the motorman was looking at people on the sidewalk and did not ring the bell, or check the speed of the car until after the plaintiff was struck. The evidence on the part of the defendant was that the car was going slowly and the bell was rung. *Held* that prayers offered by the defendant were properly rejected which instructed the jury that there was no legally sufficient evidence of negligence on the part of the defendant, and that the plaintiff was guilty of such contributory negligence as to bar her recovery. These prayers ignore the plaintiff's evidence, that the motorman had a clear view of the crossing; that he was not looking ahead; that he did not ring his bell, and that the car was running at full speed when it reached the crossing and struck the plaintiff.

*Decided November 16th, 1910.*

Appeal from the Court of Common Pleas of Baltimore City (HEUISLER, J.), where there was a judgment on verdict for the plaintiff for $3,500.

The prayers referred to in the opinion of the Court are as follows:

*Plaintiff's 1st Prayer.*—That if the jury believe from the evidence that the plaintiff received the injuries to her person as mentioned in the evidence, by being run into, struck and knocked down by a car of the defendant in charge of the motorman and conductor in the employ of the defendant, and that said running into, striking and knocking down was caused by the negligence of the defendant's motorman in the management of the car of which he was the motorman, and

that the plaintiff was, at the time of the accident walking across Charles street at the crossing thereon near Hill street, both being streets of Baltimore City, using due care in so doing, then the plaintiff is entitled to recover.  (*Granted.*)

*Plaintiff's 2nd Prayer.*—Even if the jury find that there was want of ordinary care on the part of the plaintiff, yet she is entitled to recover, provided the motorman could have avoided the accident by the exercise of ordinary care after he saw, or by the use of ordinary care might have seen, that the plaintiff was approaching near to the track and in danger of being struck by the car.  (*Granted.*)

*Plaintiff's 3rd Prayer.*—In estimating damages the jury are to consider the health and condition of the plaintiff before the injuries complained of as compared with her present condition in consequence of such injuries, and whether the same are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those business pursuits for which, in the absence of such injuries, she would have been qualified; and also the physical and mental suffering to which she had been subjected by reason of said injuries, and the jury are to allow such damages as in their opinion will be a fair and just compensation for the injuries suffered.  (*Granted.*)

*Defendant's 1st Prayer.*—The defendant prays the Court to instruct the jury that there is no evidence in this case legally sufficient to entitle the plaintiff to recover, and their verdict must be for the defendant.  (*Refused.*)

*Defendant's 2nd Prayer.*—That from the uncontradicted evidence in this case the plaintiff was guilty of negligence directly contributing to the accident complained of and therefore their verdict must be for the defendant.  (*Refused.*)

*Defendant's 3rd Prayer.*—That if the plaintiff was injured in consequence of the plaintiff's failure to act on the occasion of the accident as a person of ordinary care and prudence would have acted under the circumstances, and that such failure to use ordinary care and prudence directly contri-

buted to the accident, the verdict must be for the defendant. (*Granted.*)

*Defendant's 4th Prayer.*—If the jury shall find from the evidence in this case, that the plaintiff stepped in the way of the car of the defendant when it could not be arrested in its course and under circumstances where with ordinary care on the part of the motorman the car could not be brought to a pause early enough to save her from injury, the defendant is not liable. (*Granted.*)

*Defendant's 5th Prayer.*—If the jury find from the evidence that the plaintiff could, by the use of reasonable care and diligence, have seen the defendant's car approaching in time to avoid the alleged accident, then there can be no recovery in this case and the verdict must be for the defendant. (*Refused.*)

*Defendant's 6th Prayer.*—That, notwithstanding the jury may believe from the evidence that the defendant was guilty of negligence, yet if they shall further believe from the evidence that the plaintiff was also guilty of negligence, and that the injury was directly caused partly by the defendant's negligence and partly by the negligence of the plaintiff, then the verdict must be for the defendant without regard to whose negligence was the greater. (*Refused.*)

*Defendant's 7th Prayer.*—That if the jury find that on the occasion mentioned in the evidence the car of the defendant company was running south on Charles street, and that after leaving York street the speed of the car was increased to full speed, and that from that point to the place where the plaintiff was struck the car continued to run at full speed, and if the jury shall further find from the evidence that when the car left York street the motorman in charge thereof was not looking ahead, but was looking to the east at girls who were skylarking on the east side of Charles street, if the jury shall so find, and if the jury shall further find that at the time the car left York street, the plaintiff was standing on the pavement at the northwest corner of Charles and Hill

streets, and looked in the direction from which the car was
coming, and saw or by the use of reasonable diligence could
have seen the speed at which the car was running, and that
the motorman was not looking ahead but was looking to the
east, and if the jury shall find that the plaintiff then left the
pavement and started across the street and across the tracks
upon which the car was running, and was struck and injured
in the manner mentioned in the evidence, then there can be
no recovery in this case, and the verdict must be for the de-
fendant. (*Refused.*)

*Defendant's 8th Prayer.*—That if the jury shall find from
the evidence that at the time the car left York street, the
plaintiff was standing on the pavement at the northwest cor-
ner of Charles and Hill streets, and that she looked in the
direction in which the car was coming and saw, or by the use
of ordinary care, could have seen the car and the speed at
which it was coming, if the jury shall so find, and if the jury
shall further find that she thereafter started to cross the street
and did not look again for the approaching car before enter-
ing upon the track upon which it was approaching, and if
the jury shall further find that if she had looked when near
to the track and before entering upon the line thereof, the
danger of being struck by the oncoming car would have been
seen by her and that she could then have avoided the accident
by the use of ordinary care by stopping in a place of safety,
if the jury shall so find, then the verdict must be for the
defendant. (*Refused.*)

*Defendant's 9th Prayer.*—That if the jury shall find from
the evidence that the plaintiff saw, or by the use of ordinary
care, could have seen a car approaching before she started
to cross the street, and shall further find that she did not
look again before attempting to cross the track to see how
close the car was upon her, and if the jury shall further find
that if she had so looked, while she was still in a position of
safety, to the side of the track, and before entering upon the
line of travel of the car, she would have seen that the car

was close upon her and that if she entered upon the line of its progress an accident was inevitable, if the jury shall so find, then the verdict must be for the defendant. (*Refused.*)

*Defendant's 10th Prayer.*—That it was the duty of the plaintiff before crossing a car track on which she knew that the car was approaching, if the jury shall find that she did know that a car was approaching thereon, to look to see how close the car was upon her before getting in the way thereof, and if the jury shall find that the plaintiff failed to look before getting in the way of the car, and shall further find that if she had so looked that she could have avoided the accident by the use of ordinary care, then the verdict must be for the defendant. (*Refused.*)

*Defendant's 11th Prayer.*—That it is the duty of a pedestrian before crossing a street railway track to look to see if a car is approaching, and if the jury shall find from the evidence that the plaintiff failed to look before crossing the track, and shall further find that if she had looked she could by the use of ordinary and reasonable care have prevented the accident complained of, if the jury so find, then her negligence directly contributed to the accident and there can be no recovery in this case, and the verdict must be for the defendant. (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Joseph C. France* and *J. Pembroke Thom,* for the appellant.

*Robert F. Leach, Jr.* (with whom was *Walter L. Wells* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by the plaintiff in the Court below for injuries alleged to have been caused

by the negligence of the employees of the defendant, the United Railways and Electric Company of Baltimore, and the only exception in the record is to the ruling of that Court granting the plaintiff's prayers and rejecting the first, second, fifth, sixth, seventh, eighth, ninth, tenth and eleventh prayers of the defendant. The Reporter is requested to set out the prayers in his report of the case.

The accident which resulted in the injury complained of occurred between six and seven o'clock in the morning, on the 5th of March, 1909, at the crossing of Charles and Hill streets, in Baltimore City. There are two railway tracks on Charles street, which runs north and south, one called the west or southbound track, and the other the east or northbound. One square north of Hill street is Lee street, and between Hill and Lee streets there is a narrow street which ends at Charles street, called York street. The distance between the south side of Lee street and the north side of Hill street is three hundred and sixty-six feet, and it is about one hundred and fifty feet from the north side of York street to the crossing from the northwest corner to the northeast corner of Charles and Hill streets. At this crossing the west or southbound track is twelve feet from the curb.

The plaintiff, Rebecca Kolken, who lived on Hill street, east of Charles street, states that on the morning of the accident she left her home at No. 30 Hill street and went across Charles street to Berman's grocery store, on the northwest corner of Charles and Hill streets, to buy her breakfast; that as she was returning home, carrying a bottle of milk and a small dish of cream, just as she was about to setp from the pavement to the crossing she looked up Charles street and saw a car coming south; that the car was then between Lee and York streets, nearer to Lee street, and was "going slow;" that seeing that the car was a long distance away, and that the motorman had an unobstructed view of the crossing, she started across the street, and that as she was crossing the

tracks the car struck her and threw her on the fender. She further testified that she did not hear a bell, and on cross-examination stated that after seeing the car, as she started across the street, she did not look again because when she saw it the car was a long distance away and the motorman could see her. A number of the plaintiff's witnesses who saw the accident testified that as the plaintiff started across the street they saw the car above or about York street; that there was nothing on the street to obstruct the motorman's view of the crossing; that the speed of the car was increased as it passed York street, and that it was going rapidly or at full speed when it reached the crossing; that as the car approached the crossing the motorman was looking to the east at some girls on the east side of Charles street, and that as he did not ring the bell or check the speed of the car until it reached the crossing and struck the plaintiff. Other evidence in the case shows that the motorman did not succeed in stopping the car until it had nearly reached the opposite side of Hill street; that the plaintiff was carried some distance on the fender and was finally thrown to the east side of the car, and that one of her arms was so badly crushed that it had to be amputated just below the shoulder.

The motorman in charge of the car at the time of the accident was not present at the trial in the Court below, but the conductor testified that "from the time it left Lee street" the car "was going between six and seven miles an hour;" that the motorman was ringing his bell as he approached the crossing, and that "as he drew up to the corner he reversed the car, putting down brakes." · Other witnesses for the defendant also testified that the car was moving at moderate speed, and that they heard the bell before the car got to the crossing.

By its first and second prayers the defendant sought to have the case withdrawn from the jury: first, because there was no evidence legally sufficient to entitle the plaintiff to recover; and, second, because she was guilty of contributory

negligence, and by the other rejected prayers the Court was asked to instruct the jury that if they found that the plaintiff was guilty of contributory negligence she was not entitled to recover. All of these prayers, in effect, entirely ignore the evidence adduced by the plaintiff to show that the motorman had a clear view of the crossing; that he was not looking ahead; that he did not ring his bell, and that the car was running at full speed when it reached the crossing and struck the plaintiff. It is the duty of those in charge of a car to keep a sharp lookout as they approach a street crossing, and to slaken the speed of the car sufficiently to enable them to have it under control, so as to avoid injuring those who may be crossing the street, and the evidence adduced by the plaintiff tended to show not only that the defendant was negligent in the management of its car, but that the motorman saw, or by the exercise of proper care could have seen the plaintiff in time to have stopped the car before it struck her. Under such circumstances it would have been error to have taken the case from the jury upon either of the grounds stated in the first and second prayers, or to have instructed the jury that if they found that the plaintiff was negligent she was not entitled to recover, for even if the plaintiff was guilty of contributory negligence in attempting, under the circumstances, to cross the street in front of the approaching car, she was still entitled to recover if the motorman could, by the exercise of due care, have avoided the accident, after he saw, or by the exercise of proper care, might have seen the plaintiff as she was about to cross the tracks. This is the rule that has been repeatedly recognized by this Court as applicable to cases like the one at bar. *Lake Roland Co.* v. *McKewen,* 80 Md. 593; *Balto. Traction Co.* v. *Appel,* 80 Md. 603; *Consolidated Ry. Co.* v. *Rifcowitz,* 89 Md. 383; *United Railways Co.* v. *Ward,* 113 Md.

In *McKewen's case* the prayer which this Court said was "quite as favorable to the defendant as it had any right to expect," instructed the jury that the plaintiff was guilty of

contributory negligence, and was not entitled to recover, "unless the jury believe from the evidence that the motorman of the car in question, after he saw, or by the exercise of due care might have seen that the plaintiff was approaching the track and was apparently about to cross in front of his car, and that the attempt to do so would be dangerous to the plaintiff, might still, by the exercise of reasonable care in the management of said car, have avoided the collision, but failed to exercise said care." In the case of *Consolidated Ry. Co.* v. *Rifcowitz, supra,* the defendant offered a prayer instructing the jury that the plaintiff's evidence was not satisfactory or legally sufficient to entitle her to recover, and the Court below granted it after having modified it by adding these words: *"unless the jury shall further find that after the motorman saw, or could reasonably have seen, the peril of the plaintiff, he failed to exercise ordinary care to avoid the accident."* In reference to this prayer the Court said: "The modification which the learned Judge below made in the first prayer of the defendant before granting it was an entirely proper one, and was requisite to make it conform to the law governing the case.—Mere negligence or want of ordinary care will not disentitle a plaintiff to recover, if the defendant might by the exercise of care on his part have avoided the consequence of the neglect or carelessness of the plaintiff.—If the Court had not modified the prayer it would have taken from the jury the question of relative negligence of the parties." In the later case of *Consolidated Ry. Co.* v. *Armstrong,* 92 Md. 554, counsel for the company insisted that the rule we have stated, or rather the modification of the doctrine of contributory negligence, should be limited to cases in which the defendant could have avoided the accident by the exercise of due care after he actually saw the plaintiff's peril, but this Court refused to adopt that view, and said: "It cannot be seriously contended that when the defendant is in a position from which he ought to see, or by the exercise of reasonable care could see the plaintiff's peril,

he may avert his face or close his eyes and not see it and then escape liability for an injury resulting from such conduct on his part.—The law will not permit the loss of life or limb or even property to be deliberately or carelessly inflicted, when it could by reasonable care and caution be averted, merely because the injured person was negligent." And in *Ward's case* we said: "but even if we assume that the appellee did not, before attempting to cross the tracks, look to see if a car was approaching, and that he was to that extent negligent, the Court below would not have been justified in directing a verdict for the defendant on the ground of contributory negligence, or because there was no evidence of negligence on the part of the defendant.—If the motorman in charge of the car in question saw the appellee, or by the exercise of due care could have seen him in the act of crossing the tracks in time to have prevented the accident, it was his duty to have stopped the car in time to avoid the collision; and if the accident occurred by reason of his failure to do so under such circumstances, his negligence, and not the negligence of the appellee, was the proximate cause of the injury."

Learned counsel for the appellant, while recognizing the rule referred to, contend that it does not apply to the case at bar because here the plaintiff saw the car as she started across the street. But it can make no difference in the application of the principle whether the plaintiff's negligence consisted in venturing across the street without looking to see if a car was coming or in attempting to cross after seeing the approaching car; the rule relates to the duty of the defendant after the motorman saw, or by the exercise of reasonable care could have seen her peril. Counsel for the appellant, relying upon cases like the case of *McNab* v. *United Railways Co.,* 94 Md. 728, further contend that even if the motorman saw the plaintiff crossing the street, he had a right to assume up to the very moment she stepped on the tracks

that she would not venture to cross until after the car had passed, and that the last act of negligence was committed by her.  In *McNab's case* the accident happened at a crossing in the open country where cars are permitted and known to run at much greater speed than is allowed on the streets of a city, and JUDGE McSHERRY, quoting from *Neubeur's case,* 62 Md. 401, said: "it was not the duty of those in charge of the train to anticipate the conduct of the plaintiff, and because they saw him approach the crossing to conclude that he would attempt to cross in advance of the train."  But, as was distinctly recognized in that case, a very different rule applies to the running of cars on the crowded thoroughfares of a city, where the motorman *is required to anticipate* the conduct of those crossing the streets to the extent of keeping a sharp lookout, giving proper warning and reducing the speed of his car so as to have it under control for the purpose of avoiding injury to those who may be on the crossing.  In the case of *Heying* v. *United Railways Co.,* 100 Md. 281, citd by counsel for the appellant, JUDGE FOWLER said that there was no evidence "to show that after the motorman saw her in a place of danger, or could have so seen her by the exercise of any, even the greatest degree of care, could have stopped the car in time to have avoided the collision."

What we have said in regard to the rejected prayers of the defendant disposes of the exception to the granting of plaintiff's second prayer, and we do not understand the appellant as excepting to the plaintiff's first and third prayers, to which we see no objection, except upon the ground presented in the contention that the case should have been taken from the jury.

Finding no error in the ruling of the Court below the judgment will be affirmed.

*Judgment affirmed, with costs.*