## CAPITAL TRACTION COMPANY *vs.* ZELPHA L. CONTNER.

*Negligence*: *street railways; amount of travel on street and tracks; duty of railways; time for stopping of car; sounding of warnings; evidence; experts; province of jury.*
*Passenger in another's vehicle*: *negligence of driver.   Improper evidence*:
*when not reversible error.*

In an action against an electric railway company for damages received by the plaintiff from a collision between the carriage in which he was riding and one of the cars of the defendant, it is admissible for the plaintiff to show the amount of travel on the street at the place of the accident, and the fact that both roadway and tracks were used indiscriminately by the traveling public.                    p. 82

A greater degree of care is required of an electric railway company in running its cars through the crowded streets of a city than through the open country where the travel is less.
                                             p. 82

In an action for damages for injuries received in a collision with an electric car, when one of the issues is, in what distance the car could have been stopped after the motorman saw or ought to have seen the perilous condition of the plaintiff, it is competent for the latter to prove by expert testimony what was the distance in which such a car could ordinarily have been stopped.                    p. 82

But one who had no knowledge upon the subject, other than that of any casual user of a trolley car, is not competent to testify as an expert on the question.                    p. 83

The admission of improper testimony is not ground for a reversal when testimony to the same effect is properly in the case, *aliunde*.                    p. 83

Whatever liberality may be allowed in admitting the opinion of experts and other witnesses, they should not be allowed to

usurp the province of the court and jury by drawing those conclusions of law or fact, upon which the decision of the case rests. p. 84

In an action against an electric railway for damages caused by a collision between one of its cars and the vehicle of the plaintiff, it is not admissible to examine a witness as to whether in his opinion the motorman had not time, after he first saw the situation of the plaintiff, to have stopped the car so as to have avoided the accident. pp. 83-84

In an action for damages for a collision with an electric car, after the motorman had been examined at length and in detail as to what he did as he was approaching the place of the accident, the plaintiff has the right, on cross-examination, to contradict his testimony, if possible, by examining him as to matters which were not brought out on the examination in chief. p. 84

Where traction companies use the streets of a town, in common with the public, their rights are not superior to those of the public, and due care requires them to keep a sharp lookout and use care that they do not run down pedestrians or vehicles. This is especially true at crossings, where the cars should be under such control as to be stopped promptly should necessity so demand. pp. 85-86

The failure to sound a warning as an electric car was approaching the crossing where an accident occurred does not, of itself, render the railway company liable when, as a mater of fact, the plaintiff knew otherwise of the approach of the car.

p. 85

In such a suit it is not proper to leave to the jury to decide whether the motorman had time to stop the car when he saw the plaintiff on the track. The question should be, whether the motorman had not time enough from the time that he should have seen the plaintiff, because it was his duty to watch for those approaching as well as for those upon the track. p. 86

Where a passenger, driven in a vehicle, is injured by a collision of the vehicle, the negligence of owner, or of the person driving can not in general be imputed, to the passenger. p. 86

The only negligence to be attributed to the passenger, in such a case, is such as he might be guilty of when he became aware that he was in a position of peril.                                    p. 87

Prayers are erroneous when based on theories of which there is no evidence properly in the case.                                    p. 88

*Decided February 21st, 1911.*

Appeal from the Circuit Court for Montgomery County (PETER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George T. Dunlop* and *Charles W. Prettyman,* for the appellant.

*Preston B. Ray* and *Arthur Peter,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This is an appeal from a judgment recovered by the appellee against the appellant, because of injuries received by her through the alleged negligent operation of a trolley car by the appellant's employees.

The appellant operates a double track electric street railway system, running in a northerly direction from the City of Washington into Montgomery county, through Chevy Chase, a thickly settled suburban town. It enters Chevy Chase at what is called Chevy Chase Circle, and proceeds on the road bed of Connecticut avenue to Chevy Chase Lake. Connecticut avenue is the main street of Chevy Chase and is much travelled. The avenue from the circle to the north for several blocks is straight and practically level, and has a width of one hundred and sixty feet, with no obstructions. The second street to the north on the avenue is Irving street, and crosses the avenue at right angles, and is fifty-six feet in width. The tracks on the avenue are level with the roadbed and both, the tracks and roadbed, are used by the public in

driving. The track on the west side of Connecticut avenue is the one used by cars running to Washington.

The appellee, a resident of Washington, had spent the afternoon of the day of the accident in the neighborhood of Chevy Chase, as the guest of Mr. A. J. Cummings. About nine o'clock in the evening, it being a clear night, wishing to take a car of the appellant for her home she was driven by Mr. Cummings in his runabout out to the circle, and from there on the east side of Connecticut avenue over the roadbed parallel with the tracks of the appellant, towards Irving street. When they approached Irving street they saw a car of appellant, between Irving street and street above, coming south, running about seven or eight miles an hour. Mr. Cummings started to cross the tracks at the south of the south side of Irving street, the car being about one hundred feet away, to join some people standing at the brick pavement on the north side of Irving street, waiting to take the same car, when his buggy was struck by the car and the appellee thrown out and injured. The car passed entirely over Irving street before it was stopped. There was a conflict of testimony as to where the cars south bound were accustomed to stop to take on passengers. The witnesses for the appellee testifying that the front end of the car stopped on north side of the street; while the appellant's witnesses testified that the rear end of the car stopped opposite the brick pavement on north side of the street and thereby putting the length of the car partly across street. The cars were equipped with large electric reflectors, and there was a cluster of lights just north of the intersection of the avenue and street. A north bound car passed the south bound car between Irving street and the next street to the north, the light from the reflector partly blinding the motorman on the south bound car.

The record contains eight exceptions to the ruling of the Court below; six as to the admissibility of testimony and two as to the action upon the prayers.

The first two relate to permitting a witness for the plaintiff to testify as to the amount of travel over the railway at,

or about, the place of the accident; and the condition of the track, at same place, as compared with the roadway.

The object of this testimony, evidently, was to show that this street was a much travelled one, and both roadway and the tracks were used indiscriminately by the travelling public. The purpose being, of course, to establish the degree of care to be exercised by the agents of the defendant in running their cars; this Court having said on several occasions that a greater degree of care was required in running a car through the streets of a city, where people were frequently crossing and driving along the tracks, then through the open country where the travel was less frequent. *United Rys. Co.* v. *Ward,* 113 Md. 649; *United Rys. Co.* v. *Kolken,* 114 Md. 160; *McNabb* v. *Rys. Co.,* 94 Md. 724. We therefore think it was proper that this testimony should have been admitted.

The third exception was in permitting the witness Cummings to answer the last of the following questions:

"Q. Have you had occasion while traveling upon cars of this road, similarly equipped with brakes, to the one which caused this accident, to observe how quickly the cars could be stopped? Ans. I have.

"Q. Within what distance? Ans. Half the length of the car."

The witness later testified a car was fifty feet in length.

We do not think it can be disputed that if the witness is qualified, testimony of the character here sought to be introduced is admissible. The main issue in this case was, whether, or not, this car could have been stopped after the motorman saw, or should have seen, the peril of the appellee. Therefore there was no better way of showing this, than by proving, by competent witnesses, the distance in which a car equipped the same as the one in question, and under similar conditions, could have been stopped. But the question under consideration attempts to prove this by only calling the witness' attention to cars similar and similarly equipped with brakes, and leaving out of consideration the numberless other conditions that must surely have an effect

upon the distance in which a car can be stopped. We further do not think this witness was a ·competent witness to testify upon this subject. He certainly was not shown to have had any knowledge, upon this subject, other than any casual user of a trolly car would have. We do not think this witness should have been permitted to testify along this line; but we are also of the opinion, that, in permitting his testimony to stand, no reversible error was made, nor prejudice done the appellant, for the appellant proved by its motorman in charge of the car in question, that under exactly the same conditions he could stop a car within twenty-five or thirty feet. And on cross-examination the same witness testified he could stop within fifteen or twenty feet. So if this were the only error disclosed we would not reverse this judgment because of it.

The fourth exception was taken upon the Court permitting the same witness, Cummings, to testify in answer to this question, as follows: Q. State whether or not, in your opinion, the motorman of this car could have stopped the car, from the time that he first saw you upon the track, upon which it was running,· at or near the time of the accident, and the time that the car struck your buggy? Ans. I know that he could easily have stopped. That is he could have stopped in time to have saved the car from hitting the vehicle.

There has been a great diversity of opinion among the Courts of this country as to admissibility of evidence of this character. In Maryland this Court settled the question in case of *Tall* v. *Steam Packet Co.,* 90 Md. 248, where a witness testified, "If the captain had responded promptly I don't believe the affair would have occurred." This Court said "The opinion of the witness was excluded. The question at issue in the case was for the jury, or the Court, dealing with the legal sufficiency of the evidence, to determine, and not for the witnesses to decide. It was for the jury, if the case went to them, or for the Court in dealing with the question as to whether there was legally sufficient evidence to be con-

sidered by the jury, to say from the facts in evidence whether the captain acted with appropriate promptness, and it was not the province of the witnesses at all."

At the conclusion of this case the only question, practically, the jury had to decide from the evidence was this very one about which this witness expressed his opinion. "Whatever liberality may be allowed in calling for the opinion of experts and other witnesses, they must not usurp the province of the Court and jury by drawing those conclusions of law or fact upon which the decision of the case depends." *Jones on Evidence,* (2nd Ed.), sec. 372. The appellee contends, that even if this was error, it was corrected by later testimony. We can not agree with that opinion, but think that probably great prejudice was done the appellant by the admissibility of this testimony; and are therefore of the opinion that it is reversible error.

The fifth and sixth exceptions are based upon allowing two witnesses to testify to a conversation had with the motorman a few seconds after the accident. The motorman, a witness for the defendant, on cross-examination was asked, whether he had not said to one of the witnesses, in the presence of the other, "I completely lost control of my car." This he denied. The two witnesses then testified, over objection, that he had said this. From the time and order in which this testimony was offered, we presume it was offered for the purpose of impeaching the credibility of the motorman.

The appellant contends that it was not admissible, for the reason that it was a collateral matter raised by cross-examination, and the appellee was bound by the answer. We can not agree with this contention. It was a question affecting one of the issues in the case. The motorman had been asked in great detail about his conduct of the car as he approached the crossing, and had detailed all he did, in an effort to stop the car, before the collision. We are of the opinion, that it was eminently proper to offer testimony to contradict him if possible. *Mason v. Poulson,* 43 Md. 176; *B. & O. R. R. v. Good,* 75 Md. 530; *Chesapeake Beach Rwy. Co. v. Donahue,* 107 Md. 128.

The exceptions to the prayers cover the granting of the plaintiff's first, second, third and fourth and the rejection of the defendant's first, third, fifth and sixth and the overruling of a special exception to the granting of the plaintiff's second prayer.

Defendant's first prayer sought to have the case withdrawn from the consideration of the jury, on the ground that there was no legally sufficient evidence entitling the plaintiff to recover. This was refused, and we think properly so.

We are of the opinion that the record discloses no evidence of primary negligence, in that the motorman in charge of the car was incompetent, or that the defendant failed to have proper appliances upon the car for the purpose of stopping it, or that the same were out of repair, or that they were negligent in failing to sound a gong upon their approach to a crossing. While it was true no gong was sounded, yet for the purposes of this case, that was not necessary, for the very good reason that both the appellee and the driver were both aware of the approach of the car, before they attempted to cross. But there was sufficient evidence to submit to the jury, the question as to whether after the motorman saw, or by the exercise of due care could have seen, the buggy upon the tracks, he could, by the exercise of ordinary care have stopped the car in time to have avoided the collision. In cases like the present, that this is the test, has been established and followed in *Balto. Traction Co.* v. *Appell,* 80 Md. 603; *Lake Roland Co.* v. *McKewen,* 80 Md. 593; *Consol. Ry. Co.* v. *Rifcowitz,* 89 Md. 338; *United Rys. Co.* v. *Biedler,* 98 Md. 564; *United Rys. & Electric Co.* v. *Cloman,* 107 Md. 694; *United Rys. Co.* v. *Ward,* 113 Md. 649; *United Rys. Co.* v. *Kolken,* 114 Md. 160.

Where traction companies use the streets of a town, in common with the public, their rights thereon are not superior to the public's, and due care requires that they keep a sharp lookout and exercise care that they do not run down pedestrians or vehicles. This is especially true upon their ap-

proach to an intersection of streets where more or less persons are to be expected to be crossing. They should have the car under such control that it can be stopped promptly if necessity demands it.

The evidence is undisputed, that from the place where Cummings attempted to cross the tracks, to a great distance in the direction from which the car was coming, the tracks were straight and there were no natural obstructions, although a car, going in the opposite direction, passed the south bound car, north of the intersection of the streets, the witness being doubtful as to the distance. There was a cluster of electric lights at the intersection of the streets. The car was equipped with a powerful electric reflector lamp to light the tracks. There was evidence tending to show that a car under similar conditions could be stopped within fifteen or twenty feet. The motorman testified that as he approached the crossing, "I noticed passengers—a number of them—I was carefully looking at that side and didn't think of any obstruction in the way." The evidence tended to show that the car was about one hundred feet away when Cummings drove upon the tracks. In view of this evidence we think it was a proper case for the jury to pass upon.

The third prayer of appellant was defective in that it confined the question of exercise of due care, upon the part of the motorman, to the time when the buggy was driven upon the track. It should have embraced the time when he could have seen it, for it was his duty to watch for those approaching as well as those upon the tracks. *Balto. City Pass. Ry. Co.* v. *McDonnell,* 43 Md. 532; *Balto. Traction Co.* v. *Wallace,* 77 Md. 435; *United Rys. Co.* v. *Kolken,* 114 Md. 160.

By its fifth prayer, the appellant sought to leave to the jury the question, whether or not, the appellee was guilty of contributory negligence. It was conceded that the negligence of Cummings, if any, could not be imputed to the appellee. This could not be otherwise, in view of the rule established by *Hogeland's case,* 66 Md. 149, and followed in *B. & O.*

*Railroad Company* v. *Strunz,* 79 Md. 335, and *United Railways Company* v. *Biedler,* 98 Md. 564. But it is contended, that from the fact that the appellee saw the car approaching, and did nothing to prevent Cummings from driving upon the track, nor to save herself from the peril, and relied wholly upon her companion, that they constituted facts from which the jury could find her negligent so as to defeat her recovery. As we stated, *supra,* the single theory upon which recovery could be based in this case, was that there was evidence tending to show that the collision could have been averted by the motorman, in the exercise of due care. Then, in that event, the fact that the appellee saw the car approaching, when they drove upon the tracks, could not defeat her recovery, if the motorman saw her, or by the exercise of due care, could have seen her, in time to have avoided the collision by the exercise of due care. This Court said in *United Rys.* v. *Kolken, supra,* at page 170: "Learned counsel for appellant while recognizing the rule referred to, contend that it does not apply to the case at bar because here the plaintiff saw the car as she started across the street. But it can make no difference in the application of the principle whether the plaintiff's negligence consisted in venturing across the street without looking to see if the car was coming, or in attempting to cross after seeing the approaching car; the rule relates to the duty of the defendant after the motorman saw, or by the exercise of reasonable care could have seen her peril." Therefore, the only material inquiry could be—not whether there was any act of negligence by the appellee before the time of peril, because this would not excuse the appellant, but whether, after she became aware that she was in a position of peril, anything could have been done by her, that a prudent and reasonable person would have done, to have saved herself from her plight. There is no evidence that there was any way in which she could have saved herself. In all probability if she had attempted to save herself in the few seconds between the time in which she must have realized her

peril, and the moment of the collision, she would have subjected herself to the charge of negligence rather than have freed herself from it.

In view of the limited question before the jury we do not think there was any basis of fact for such a prayer and that therefore its rejection was proper.

The sixth prayer of the appellant should have been granted. The proposition of law there enunciated is correct, and is applicable to the facts of this case. It states the theory upon which the case was tried, and is the converse of the third prayer of appellee, with the exception that it leaves to the jury to find from the evidence whether the motorman was bringing his car to a stop in the usual manner and at the usual place. The usual place of stopping was one of the controverted facts, and because the conclusion of the prayer is predicated upon the finding of that, should be no reason of complaint by the appellee. It states fully and fairly the duty owned by the appellant to the appellee, after the motorman saw, or could have seen, the peril of the appellee.

We find no error in the granting of the appellee's first prayer. It is in the form often approved by this Court in cases of this character. If the appellant thought its terms too general, and afforded no guide to the jury in applying the law to the evidence, the appellant should have applied to the Court for more specific instructions.

The reasoning we have applied to the fifth prayer of the appellant applies to the second prayer of the appellee, and for those reasons we think it was properly granted.

The third prayer of appellee was a correct statement of the law of the case.

The fourth prayer was the usual damage prayer, and was properly granted.

Because of error in admitting the opinion of the witness Cummings, and the rejection of the appellant's sixth prayer the judgment appealed from must be reversed and a new trial awarded.

*Judgment reversed, with costs to appellant and new trial awarded.*