# CHARLESTON.

## HALL & CO. v. LYONS & CO.

Submitted January 22, 1887.—Decided February 12, 1887.

1. SUMMONS—PARTNERSHIP—NAMES OF PARTNERS—PROOF.

Where a warrant is issued against a firm, and the summons states the name of the firm and the names of the partners, who constitute the firm, upon the trial of the case, whether before the justice or before the Circuit Court on appeal, the plaintiff is not bound to prove, who are the members of the firm, unless an affidavit be filed denying, that those named in the summons constitute the firm. (p. 417.)

2. PRESUMPTION—EVIDENCE—RECORD.

If in the trial of a case a court admits evidence offered by the plaintiff against the protest of the defendant, ruling improperly, that the evidence is admissible, and there is a verdict and judgment against the defendant, the appellate court will, when the question is properly brought before them, presume, that the defendant was prejudiced by such improper ruling, unless it affirmatively appears from the record, that in point of fact the defendant could not have been prejudiced by the ruling; and ordinarily this can only be made to appear by all the evidence being certified, so that the appellate court is satisfied, that, if this improper evidence had been excluded, the plaintiff's case would still have been made out so clearly, that, if the jury had found a verdict for the defendant, the court ought to set it aside as unsustained by the evidence or contrary thereto. (p. 420.)

3. AFTER-DISCOVERED EVIDENCE.

A court should never set aside a verdict for after-discovered evidence, unless the evidence is such, that its introduction ought to produce a different verdict. (p. 422.)

4. EVIDENCE—BOOKS OF ACCOUNT.

If objected to, the court ordinarily ought not to permit a plaintiff to prove, that he charged the account sued on to the defendants and not to one of them only on his original book of entries,

This should be proven by the production of said book, unless it be shown, that the book has been destroyed or for some other sufficient reason can not be produced. (p. 420.)

Statement of the case by GREEN, JUDGE:

The plaintiffs, J. A. Hall & Co., on September 16, 1881, procured from a justice of Cabell county a summons against A. Lyons and W. A. Lyons, doing business as A. Lyons & Co., to answer the plaintiffs for the recovery of money due them for merchandise, the amount of the demand being stated to be $187.21. The case was tried before the justice on October 1, 1881; and the defendants appeared. After hearing the evidence and the arguments of counsel on both sides the justice rendered a judgment for the plaintiffs against the defendants for the whole of the demand, $187.21, with interest thereon from October 1, 1881, till paid and costs. The defendants took an appeal from this judgment. The case was tried in the Circuit Court of Cabell county by a jury of six, who on March 16, 1885, rendered this verdict: " We, the jury, find for the plaintiffs and assess their damages including principal and interest to this date at $221.89." Whereupon the defendants moved the court to set aside the verdict as contrary to the law and evidence and because of after-discovered evidence unknown at the time of the trial. This motion was overruled and judgment was rendered by the court against the defendants and the security on the appeal bond for $221.89, with legal interest thereon from the date of the judgment, March 25, 1885.

To this judgment a writ of error and *supersedeas* has been awarded.

Exceptions were taken during the trial and to the refusal of the court to grant a new trial, from which it appears, that the evidence before the jury and the proceedings in the case were substantially as follows:

The plaintiffs proved by R. H. Baker, a member of the firm of J. A. Hall & Co., the plaintiffs, that he conducted the merchantile business of the firm at Milton, in said county, in the year 1879;—that in the spring of that year he refused to sell any goods or supplies to Hanna & Knight;— that shortly after J. R. Burke came to him and said, that he was the agent of the defendants, A. Lyons & Co., a firm con-

sisting of A. Lyons and W. A. Lyons, for whom Hanna & Knight were getting out headings, and asked the plaintiffs to furnish Hanna & Knight such goods and supplies, as they might call for till further orders from him, and charge the goods so furnished to the defendants, A. Lyons & Co., who would pay the plaintiffs' account monthly;—that they accordingly furnished Hanna & Knight goods and supplies during the month of June, 1879, to the amount of $155.65;—that this with other items of account, which the plaintiffs had against the defendants amounted to $215.34;—that in July, 1879, this whole account was paid by a draft on A. Lyons;—that a few days after this draft was taken up by Burke, he giving for it a check, which was paid;—that the plaintiffs, the account for June having been thus promptly paid, continued to furnish Hanna & Knight goods and supplies during the month of July up to the 26th of that month, charging the same to A. Lyons & Co. according to the understanding with Burke;—that on the said 26th of July Burke told them to furnish no more goods or supplies to Hanna & Knight on account of A. Lyons & Co., and they accordingly stopped furnishing them goods;—that the amount of goods and supplies furnished to Hanna & Knight during the month of July, before he received said notice to stop, was $149.56, with $17.64 worth of staves furnished by the plaintiffs to the defendants made up the sum of $167.20, which with the interest on it is the account warranted on in this case.

It further appears, that shortly after this account was incurred, witness got Hanna, Knight and Burke together, and together they made a settlement, by which it was ascertained and agreed, that the amount of goods and supplies furnished to Hanna & Knight or on their orders during the month of July, 1879, was $149.50;—that Burke took a memorandum of the amount and promised to pay it;—that, as payment was not made promptly, he mentioned the matter to Burke, who said, he supposed his parties were hard up, but that the account would be paid;—that, before the suit was brought, he met W. A. Lyons, one of the defendants, and asked him about the payment of this account, and he said:—"We would have paid it long ago, if our agent, Capt. Burke, had

said it was all right; but he said it was not;—that the goods and supplies and the staves were all charged to A. Lyons & Co.;—that they would not have been furnished to W. A. Lyons, as he was insolvent, A Lyons being the responsible member of the firm of A. Lyons & Co.

On cross-examination the defendants' counsel showed this witness, Baker, an itemized account, which had been furnished to the defendants during the trial of the case in the Circuit Court, no such account having been asked for before. This itemized account was made off against A and W. Lyons as debtors to J. A. Hall & Co., and among the items of the account were charges of orders to numerous parties, and witness was asked, if these orders were in writing, and he answered, they were and signed by Hanna & Knight. He was then asked, to whom these goods were charged on plaintiffs' books, and he answered, to Lyons & Co.; then this witness was asked to produce the books of the plaintiffs, in which he said, this account was charged against A. Lyons & Co., and he was also asked to produce the written orders given by Hanna & Knight for goods and supplies to different persons, as stated in this account. The witness said the books and written orders were at his place of business in Milton, some eight or ten miles distant, and he could not produce them immediately. This witness's evidence was then objected to by the defendants, because it was secondary, and they demanded the production of these books of original entry and these orders; but the court overruled the objection, on the ground that it would not stop the trial of the case to send for the books and orders, and because of the *laches* of the defendants in not demanding these books and orders, before they went into trial, and in not having a *subpœna duces tecum* issued for them, before the case was called for trial. Thereupon the defendants' counsel moved the court to exclude said evidence from the jury as improper, which motion the court overruled, and the defendants excepted.

The plaintiffs then proved by S. Martin, that he was in the plaintiffs' store and heard Burke tell Baker to let Hanna & Knight have goods and Lyons would pay for them.

Burke, a witness for the defendants, testified, that he was agent for W. A. Lyons, of Huntington, West Virginia, who

was buying and selling staves, headings, hoop-poles, &c., along the line of the Chesapeake and Ohio Railroad and at Milton;—that as such agent he made a contract with Hanna & Knight to furnish to W. A. Lyons a lot of heading, &c., to be delivered at Milton;—that he told Baker, of the firm of J. A. Hill & Co., that Hanna & Knight were getting out headings for W. A. Lyons, and so far as Lyons might owe Hanna & Knight for such headings, &c., he would pay such bills, as Hanna & Knight might make at the store, at the end of each month;—that at the end of the month of June, 1879, the plaintiffs by Baker presented their bill made out against A. Lyons. This, the witness said, was done by inadvertence in leaving out the first initial "W" of W. A. Lyons's name, against whom the bill should have been made out;—that A. Lyons lived in Pittsburg;—that A. Lyons & Co. was a firm engaged in the oil-business in Pittsburg, and that W. A. Lyons shipped a considerable number of staves and headings, &c., from Cabell county, West Virginia, where he lived, to A. Lyons & Co. at Pittsburg. He said, he was not the agent of A. Lyons & Co., and never told Baker, that he was;—that he was the agent of W. A. Lyons only and was directed by him only;—that, so far as he knew, W. A. Lyons was not a member of the firm of A. Lyons & Co., and that firm, so far as he knew, was not doing business in West Virginia;—that W. A. Lyons did not fail in business till 1880. The following paper setting out the June account was proven by Burke to be in his own handwriting and it was receipted :

"W. A. LYONS,

|  | To J. A. Hall & Co., | DR. |
|---|---|---|
| July 1st—To Hanna's orders per month of June | ...... .. | $155 65 |
| " W. A. Lyons's order favor H. Knight | .... ... | 16 90 |
| " Debit on Garley's acct........ | ........... | 6 00 |
| " 2,200 first-class staves @ $11.00 | ............. | 24 50 |
| " 1,369 second-class staves @ $9.00 | ..... ....... | 12 29 |
|  |  | $215 34 |

"July 17th, 1879.—Received payment in full of the above account by draft on A. Lyons.

"J. A. HALL & Co."

"July 19th, 1879.—Received check No. 608 in exchange for the above draft, draft to be returned.

"J. A. HALL & Co."

These being all the facts proven or testified to, the jury rendered a verdict for the plaintiffs against the defendants and assessed the damages principal and interest to time of trial at $221.89. The defendants by counsel asked for a new trial, which the court refused to grant. They subsequently made a motion for a new trial based on evidence discovered after the trial as shown by the affidavit of W. A. Lyons. This after-discovered evidence was the following receipt:

"Received, Milton, W. Va., Aug. 1st, 1879, of J. A. Hall & Co. one hundred and forty nine dollars and fifty three cents on account of W. A. Lyons.
                                        "HANNA & KNIGHT."

In his affidavit W. A. Lyons stated, that this receipt was in the handwriting of Baker and was by accident left with the papers in the case by said Baker with other papers of said Baker's and was accidentally discovered by the defendants' attorney while he was looking over the papers in the case;—that this paper, the existence of which was unknown to the defendants and could not have been discovered by them, proved, that the plaintiffs' debt was with and on the credit of W. A. Lyons only, and that they charged the amount on their books to W. A. Lyons alone, and that Baker knew all this, though he testified otherwise, as this receipt referred and could refer to nothing else but this debt sued on in this cause, and was the same account of $149.56, which constitutes nearly the whole of the plaintiffs' claim in this suit now brought against A. Lyons & Co., when the credit was, as shown by this receipt, given to W. A. Lyons only. But the court refused to grant a new trial even for this after-discovered evidence and entered up judgment for the plaintiffs according to the verdict; and the defendants excepted and have obtained a writ of error and *supersedeas* to the judgment.

*Simms & Enslow* for plaintiffs in error.

*Z. P. Vinson* for defendants in error.

GREEN, JUDGE:

The statement of this case shows, that the main controversy in the court below was about facts, though there were

some legal questions involved. To determine these legal questions we must first state what facts were in our judgment proved by the conflicting evidence. A. Lyons & Co., defendants below, plaintiffs in error, were a firm engaged in business at Pittsburg, Pennsylvania. In order to reach a correct conclusion in this case, it is important to determine definitely, who were the members of this firm. If W. A. Lyons was a member, there can be, as we shall presently see, no question that the judgment complained of was correct and should be affirmed. It is true, that there was no direct evidence given to the jury by the plaintiffs as to who constituted this firm. On the contrary the defendants by their witness, Burke, endeavored to produce the impression on the jury, that W. A. Lyons was not a member. He says:—" A. Lyons & Co. was a Pittsburg firm engaged in the oil-business; and W. A. Lyons shipped staves and headings from this (Cabell) county to A. Lyons & Co. at Pittsburgh. If A. Lyons & Co. were in business in West Virginia, I did not know it; and if A. Lyons was a partner of W. A. Lyons in the stave-business in Cabell county, W. Va., I did not know it. I did not know A. Lyons in the business in which I was engaged; but I was employed and directed solely by W. A. Lyons and was not the agent of A. Lyons & Co. I did not tell Baker, the plaintiff, that I was the agent of A. Lyons & Co. A. Lyons might have been a partner of W. A. Lyons; but, if he was, I did not know anything of it. "

It is obvious, that the statement of the witness, that he did not know, that W. A. Lyons was a partner in the firm of A. Lyons & Co. and his other statement, that he was not the agent of A. Lyons & Co. were both false, and that the jury believed them to be false. W. A. Lyons lived in Cabell county, and it is obvious, he was present at the trial on the part of the defendants; for the record shows that, two days after the verdict was rendered, he personally made an affidavit in the case to obtain a new trial. In all probability he was present and heard the statements of the witness. Burke; and if it had been true, that he was not a partner in the firm, he would have been sworn to prove it and to confirm the statement of the witness, that he. the witness,

was not the authorized agent of A. Lyons & Co. It is true, he would not have been permitted to testify, that he was not a member of the firm, if his testimony had been objected to by the plaintiffs; but he would have been allowed to testify, that Burke was not the agent of A. Lyons & Co.; and his failure so to testify was under the circumstances confirmation strong of the proof that Burke was the agent of said firm. He would not have been allowed to testify, that he was not a member of the firm, because both he and A. Lyons had already in effect admitted, that he was one of the partners. Section 41 of chapter 125 of the Code provides, that, " where defendants are sued as partners, and their names are set forth in the declaration, it shall not be necessary to prove the facts of such partnership, unless the pleadings, which puts the matter in issue, be verified, or there be an affidavit filed therewith denying said partnership. " And section 50 of chapter 50 of the Code provides, that the pleadings before a justice shall be the complaint and the answer of the defendant, which may be in writing or oral. If there be no written complaint, it is of course that set forth in the summons. In this case the summons was against " A. and W. A. Lyons doing business as A. Lyons & Co. " And as when in the Circuit Court the defendants are sued as partners, and their names are set forth in the declaration, it is not necessary for the plaintiffs to prove the fact of such partnership, or that the names of the members thereof have been correctly stated, unless the correctness of the names and the existence of the partnership are denied on oath,—so in a suit before a justice, if the complaint contained in the summons sets forth the names of the persons composing the partnership and the firm name, it is not necessary for the plaintiff to prove the existence of the partnership, or that the names of the partners are correctly stated in the summons, unless the defendant denies it on oath. By failing to file such affidavit the defendants in this case confessed, that A. Lyons and W. A. Lyons were the members of the firm of A. Lyons & Co.

Burke, the witness for the defendants, in his evidence above stated, that he did not know, that W. A. Lyons was a member of the firm of A. Lyons & Co.; but he takes care to

qualify this by saying:—" in the stave-business in Cabell county, W. Va." He does deny, that he knew, that W. A. Lyons was a partner with A. Lyons in the oil-business in Pittsburg, and that as such partner he resided in Cabell county, W. Va., and furnished the firm A. Lyons & Co. with staves and headings obtained in Cabell county to make barrels, wherein to put the oil in the selling of which A. Lyons & Co. (including W. A. Lyons) were engaging in Pittsburg. That this was the fact is apparent from the evidence of this witness above quoted, though he resorts to the subterfuge of regarding the obtaining of the staves and headings for the oil-barrels a distinct business, though, as he states, large numbers of staves and headings were shipped by W. A. Lyons, one of the partners, to the firm, of which he was a member, at Pittsburg. Upon the statement of this witness alone the only proper inference is, that he was the agent of A. Lyons & Co. to aid in obtaining in Cabell county staves and headings for oil-barrels for the firm, though, as was natural, he was employed by and acted under the direction of W. A. Lyons, the member of the firm living in Cabell county. The witness by a subterfuge tried to impress the jury with the notion, that he was the agent of W. A Lyons individually carrying on the independent business of getting staves and headings and selling them to A. Lyons & Co. or t any one else ; and this is the defendants' claim, but it is abundantly disproved by the evidence of their own witness. It is further disproved by the evidence of Baker, one of the firm of J. A. Hall & Co., who testified as follows :—" J. R. Burke came to me and represented, that he was buying staves and headings as agent of A. Lyons & Co. composed of A. Lyons and W. A. Lyons, and that Hanna & Knight were getting out headings for A. Lyons & Co. and asked the plaintiff to furnish Hanna & Knight such goods and supplies, as they might call for, and charge A. Lyons & Co. with the same, and they would pay for them monthly."

There is no substantial difference, so far as the merits of this case are concerned, between this and what the defendants' witness Burke says, except that Burke says, he told plaintiff they were getting out staves and headings for W. A. Lyons, not for A. Lyons & Co. We have shown the falsity

of this statement of Burke's. The staves and headings according to his own statement was shipped to A Lyons & Co. at Pittsburg by W. A. Lyons, a member of the firm residing in Cabell county. That all the parties perfectly well understood this to be the case is shown by the fact, admitted by Burke, that the plaintiffs' account made with Hanna & Knight under the arrangement for the month of June was made out against A. Lyons and paid by Burke, the agent, by a draft on A. Lyons, the draft being dated July 17, 1879, and Burke obtained a receipt for the account signed by J. A. Hall & Co., which is in the following words :—" July 17th, 1879, received payment in full of the above account by draft on A. Lyons.—J. A. Hall & Co."—Burke pretends, that through a mistake this receipt states, that the payment was made by a draft on A. Lyons instead of on W. A. Lyons. This statement the jury no doubt believed to be untrue. W. A. Lyons lived in Cabell county where this settlement took place, and it seems highly improbable, that the account was settled by a draft on him. He did not have much money, as is admitted. On the other hand it was perfectly natural to draw the draft on A. Lyons at Pittsburg, where the sales of oil by A. Lyons & Co. were made, and who had charge of the funds of the company and was the responsible member thereof.

The jury upon the evidence could not have found otherwise than for the plaintiffs. Even had the witness, Baker, not stated, that he charged the account on the books against A. Lyons & Co., or if this statement had been excluded from the jury, the other evidence was so clear, they must have found for the plaintiffs. The plaintiffs filed no itemized statement of their account, as the exact amount due had been settled at a meeting of one of the plaintiffs, Hanna, Knight and Burke, held for that purpose, and Burke had taken a memorandum and promised to pay it. After the cause was called for trial in the Circuit Court, the plaintiffs furnished the defendants' counsel at their request an itemized account. In this account there were several charges for payment made to sundry persons on orders drawn by Hanna & Knight. These were doubtless orders in favor of hands employed by Hanna & Knight. There was no contro-

versy about them, as the entire amount of this itemized ac-
count was exactly the same as the amount agreed upon by
the parties themselves at their settlement.

These being the facts of the case, we will now consider the
questions of law arising thereon. While Baker was under
examination the defendants' counsel called for the books, in
which this account was entered and also for the orders given
by Hanna & Knight. The witness stated, that the books
and orders were at the plaintiffs' store some eight or ten
miles distant; and the court very properly refused to stop
the trial to send for them, as the defendants, if they really
wanted them, should have demanded their production, be-
fore they went to trial, or have had a *subpœna duces tecum*
issued for them before the cause was called for trial. The
court clearly did not err in its judgment in this matter. It
is not even contended in this Court, that the court below
committed any error in this respect. But Baker stated, that
the account sued on was in these books charged to A. Lyons
& Co.; and the defendants asked the court to exclude this
testimony from the jury, which the court refused to do. In
this the court erred; for, if the plaintiffs wanted to prove,
that this account was on their original books charged to
A. Lyons & Co. they should have had their books in court,
the original books being the primary evidence; and the court
ought not to have let this statement go to the jury; for it
was secondary evidence, improper to be given, while the
plaintiffs could without difficulty introduce the primary ev-
idence. But the verdict of the jury should not have been
set aside because of the error of the court; for, it is clear, the
defendants could not have been injured thereby; as it clearly
appears, that if this evidence is disregarded, there was still
enough other evidence before the jury to warrant them in
finding the verdict they did find. It has been repeatedly
decided by this Court, that, when an erroneous instruction
has been given by the court to the jury, the presumption is
that the exceptor was prejudiced thereby, and the judgment
will be reversed for this reason, unless it clearly appears
from the record of the case, that the exceptor could not have
been prejudiced by the giving of such erroneous instruction;
in which case the judgment will not be reversed for such

cause. (*Mason* v. *Bridge Co.*, 224, pt. 10 of syll., and also page 239; *State* v. *Douglass*, 28 W. Va. 298, pt. 6 of syll.; *Clay* v. *Robinson*, 7 W. Va. 368; *Beatty* v. *Railroad Co.*, 6 W. Va. 388; *Danville* v. *Waddell*, 27 Gratt. 448; *Binns* v. *Waddell*, 32 Gratt. 588.)

The principles, which underlie these decisions, lead to the conclusion, that, if a court admit evidence, which it ought to exclude, against the protest of the party objecting to its admission, and a verdict is rendered against such party, it will be presumed, that he was prejudiced thereby, and therefore such verdict should be set aside on his motion; and, if that be not done, this Court will reverse the case, unless it clearly appears from the record, that the plaintiff in error was not prejudiced by the admission of the improper evidence (and ordinarily this can appear, only when all the evidence is certified), and it appears, that, excluding this improper evidence, the verdict is so plainly right, that a different verdict ought on motion to have been set aside, and a new trial awarded. It would be folly to set aside a verdict, when the court is of opinion, that the jury should and would render the same verdict on another trial, the improper evidence having been excluded from their consideration. It is not necessarily good ground for reversal, that the record shows, that the court below admitted improper evidence against the plaintiff in error. Ordinarily this would be sufficient ground for reversal; but if it affirmatively appears from the record. that the plaintiff in error could not have been injured by this action of the court, the judgment will not for this reason be reversed. (*Gerity* v. *Haley supra*, p. 98.)

In this case we have seen, that the evidence improperly admitted could not have changed the verdict, which would have been the same, if said evidence had been excluded. But it is claimed, that the verdict should have been set aside because of evidence in favor of defendants, which was discovered after the verdict was rendered. If it be admitted, as claimed by the counsel for the plaintiff in error, but disputed by the counsel for defendant in error, that this evidence was discovered after the rendition of the verdict, that reasonable diligence could not have secured it at the former trial, that it is material in

its object and not cumulative, corroborative or collateral, it still remains to inquire, whether it is such evidence, " as ought to produce an opposite result on the merits," that is, a verdict for the defendant below. (*State* v. *Betsal*, 11 W. Va. pt. 5 of syll., pp. 703, 704, 731; *Read's Case*, 22 Gratt. 925). The facts, that the evidence claimed to be after-discovered has a tendency to discredit the evidence of Baker, if it has such tendency, is generally no grounds for granting a new trial. (*Thompson's Case*, 8 Gratt. 637; *Read's Case*, 22 Gratt. 946; *Gillilan* v. *Ludington*, 6 W. Va. 145). The counsel for the plaintiff in error does not controvert the proposition laid down in *State* v. *Betsal*, 11 W. Va. 704, that newly discovered evidence, in order to furnish the court good ground for awarding a new trial, must be such, as should produce on a new trial an opposite result, and that, unless it is such evidence, a new trial ought not to be granted. On the contrary counsel admits this to be law and cite *Meyers* v. *Brownell*, 2 Aiken 407, (16 Am. Dec. 729) and *Gardner* v. *Mitchell*, 6 Peck 114 (17 Am. Dec. 349) as confirming it. This is a settled law in this State. (*Roderick* v. *Railroad Co.*, 7 W. Va., pt. 4 of syll. pp. 54, 5˅; *Nicholas* v. *Jones*, 8 Gratt. 267).

Now I can not see, that this newly discovered evidence ought on a new trial to produce a verdict for the defendants, or that it is at all probable, that it would have that effect. It is a receipt in the handwriting of one of the plaintiffs signed by Hanna & Knight admitting that they had received of the plaintiffs on account of W. A. Lyons $149.53, which is the amount of this account sued on. The fact, that this receipt is in the handwriting of one of the plaintiffs, is regarded by the counsel for the defendants as proof, that these goods and supplies were not furnished on account of A. Lyons & Co. but on account of W. A. Lyons individually; and that therefore this suit against A. Lyons & Co for the furnishing of these identical goods can not be sustained. Now, when we remember, that W. A. Lyons was admitted to be one of the firm of A. Lyons & Co. and was the member living in Cabell county and personally known to the plaintiffs, and that they were not rendering a bill for these goods to him but simply taking from Hanna & Knight an admission of the amount of these goods and supplies furnished to them

while getting out headings and staves for oil-barrels, which were sent to A. Lyons & Co. at Pittsburg by W. A. Lyons, it seems to me, that in such an acknowledgment of the goods received this casual statement, that they were on account of W. A. Lyons, is not very significant, especially when we find, that when the like account was formally rendered, it was made out in the name of A. Lyons, who was apparently the paymaster really looked to by the plaintiffs, and was paid by a draft on A. Lyons and not by W. A. Lyons.

The truth seems to be, that the plaintiffs were very careless about the form of the accounts and papers, which they drew. They seem to have regarded it as clearly understood, that A. Lyons & Co., who got all the staves and headings made by Hanna & Knight, were to pay for the supplies furnished to them and their hands, while they were getting out the headings and staves; and sometimes they made out their account against A. Lyons, the real paymaster, sometim s against A. and W. A. Lyons as in the itemized account furnished to the counsel for the defendants during the trial of the case. Whereas according to the understanding, as I think satisfactorily proven, they ought to have made out these accounts against A. Lyons & Co. But when we consider their want of business-habits and their carelessness in such matters, it seems to me, that a receipt taken from Hanna & Knight intended to show only the amount of goods and supplies furnished, the casual statement, that it was on account of W. A. Lyons instead of A. Lyons & Co., is entitled to but little weight and ought not to and almost certainly would not change the verdict of the jury based, as that was, on the very strong evidence, which I have above stated.

For this reason, if there had been no other, the court did not err in overruling the motion of the defendants for a new trial on account of this after-discovered evidence.

The judgment of the Circuit Court must therefore be affirmed; and the defendants in error must recover of the plaintiffs in error their costs in this Court expended and damages according to law.

AFFIRMED.