# CHARLESTON.

## STATE v. ANGELINA.

Submitted October 14, 1913.   Decided November 4, 1913.

1. CRIMINAL LAW—*Appeal—Discretionary Ruling—Continuance.*
   Before reversing a judgment for error in overruling a motion to continue, it should appear that the trial court abused its discretion, and that the mover of the motion has been prejudiced thereby. (p. 147).

2. SAME—*Expert Witnesses—Hypothetical Questions.*
   Hypothetical questions to expert witnesses, on a trial for homicide, need not cover all the undisputed facts proven. The opposite party may, if desired, protect himself by including all such facts in other hypothetical questions propounded to the same witnesses on cross-examination. (p. 148).

3. HOMICIDE—*Instructions—Evidence.*
   On a trial for homicide where the evidence tends to show a mortal wound by defendant, and a subsequently self-inflicted wound by deceased which may or may not have been mortal, it is error to tell the jury in instructions propounded by the State, either (1) that defendant who inflicted the first mortal wound is guilty of first degree murder, notwithstanding the subsequently self-inflicted wound by deceased may have accelerated or been the immediate cause of his death; or (2) that defendant should be found so guilty, if upon the evidence the jury should find beyond a reasonable doubt, that deceased would have died from other causes, or would not have died from the wound inflicted by defendant, had not other causes operated with it. (p. 148).

4. SAME.
   Instructions so limited ignore the well established rules of homicide, (a) that if after a mortal wound is inflicted by one person another independent responsible agent in no way connected in causal relation with the first, intervenes and wrongfully inflicts another injury, the proximate cause of the homicide, the latter and not the former is guilty of murder; and, (b) that if such intervening responsible agent wrongfully accelerates death, he and not the agent first to wound is guilty of the homicide. (p. 148).

5. SAME—*Instructions.*
   Where in such cases the evidence justifies it, and it is sought to hold the one inflicting the first blow or wound guilty of the homicide, because his act resulted in rendering the one on whom his mortal wound had been inflicted irresponsible and to cause him to inflict upon himself another mortal wound, or a wound accelerating

his death, the instructions given should be so framed as to present clearly that theory of the case.  (p. 150).

Error to Circuit Court, Marion County.

Jim Angelina was convicted of murder in the first degree, and brings error.

*Reversed and New Trial.*

*Rollo J. Conley* and *J. G. Prichard,* for plaintiff in error.

*A. A. Lilly,* Attorney General, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

MILLER, JUDGE:

On an indictment defendant was found guilty of murder in the first degree and adjudged to be hung in expiation of the crime.

He was indicted August 14, 1912, about three weeks after the homicide, and put on his trial the next day, assisted by counsel then appointed by the court.  Counsel then moved the court for a continuance to August 19, to enable them to confer with the prisoner, a young Italian who could not speak English, to consult expert medical men, and to prepare for the trial.  This motion was supported by the affidavit of one of the counsel so appointed, and by other evidence.  If we had been sitting in the trial in place of the circuit judge, we would have granted the reasonable motion of counsel; but the trial judge has a discretion, and we cannot say from the record that he abused that discretion or that the prisoner was prejudiced by the adverse ruling of the court.  We ought to see prejudice before reversing for such error, so our cases hold. *State* v. *Madison,* 49 W. Va. 96; *State* v. *Harrison,* 36 W. Va. 729.

The prisoner's motion for a change of venue based on local prejudice and threats of lynching was also overruled.  As we have concluded the judgment must be reversed and defendant awarded a new trial, on other grounds, and as the same conditions may not now or hereafter exist in the county where the homicide occurred, we need not consider that question on this hearing.

Another ground of error is, that hypothetical questions to physicians were allowed, calling for their opinions, which did not cover all the undisputed facts proven. The argument is made that these questions, propounded to the State's witnesses, elicited entirely different responses from those propounded to the witnesses for defendant, which included all the facts, wherefore defendant was prejudiced. The authorities concur in holding that such questions need not cover all the facts, even the undisputed facts, in the case. 1 Wigmore on Evidence, section 682, pp. 778, 779; *Bowen* v. *Huntington,* 35 W. Va. 682; *State* v. *Cook,* 69 W. Va. 717; *Stearns* v. *Field,* 90 N. Y. 640; *Jackson* v. *Burnham,* 20 Colo. 532. The rule is different when it comes to instructions to the jury. Binding instructions may not without error omit facts or theories on which the case may turn. The remedy for the side opposing such hypothetical questions is on cross-examination to repeat the hypothetical questions to the witnesses with the omitted facts included and elicit answers to the questions based thereon. *Williams* v. *State,* 64 Md. 384, 5 Am. Cr. Rep. 512.

Lastly, as to the instructions given and refused. We have examined them all. All the instructions given on behalf of the State, except those numbered 9 and 13, are clearly good. They propound only well settled rules and principles of criminal law, and the objections thereto are not relied on here. And as to the instructions proposed by defendant, which were rejected, they were clearly inapplicable to the facts proven, and were rightly denied.

Defendant's exceptions to State's instructions numbered 9 and 13, overruled, are the errors mainly relied on. By number 9, the jury were told, in substance, that if defendant was found to have inflicted a mortal wound on Shaver, wilfully, deliberately and premeditatedly, and that within a minute or a minute and a half thereafter Shaver shot himself in the head inflicting a wound not necessarily fatal, and that in about twenty minutes after the infliction of the mortal wound by defendant, Shaver died, and that his death was not the result of the self-inflicted wound but that if it had any effect only hastened his death, the result of said mortal wound, it

was then their duty to find defendant guilty of first degree murder.

By instruction 13, the jury were told, substantially, that if in the manner stated in instruction 9 defendant inflicted on Shaver a *mortal wound* with like wilfullness, deliberation and premeditation, and that thereafter in about twenty minutes he died, defendant was guilty of first degree murder, as charged, *provided* the shot fired by him really contributed either mediately or immediately to the death of Shaver, even though they might believe from the evidence, beyond a reasonable doubt, that Shaver would have died from other causes or would not have died from the shot fired by defendant had not other causes operated with it.

We do not think that either of these instructions correctly propounded the law of the case. The attorney general does not much defend them. His contention is that though erroneous they were not prejudicial, if, on the evidence, defendant actually fired the fatal shot and was guilty of the crime. But we cannot concur in this view of the case. The jury, on proper instruction, not the court, are the triers of the fact of guilt. To accept the argument advanced on behalf of the State would be to put the court in a position to deny the prisoner a trial of the fact by the jury. This would not do in any case, particularly in a case of a capital crime. We cannot see that these erroneous instructions did no harm, and the authorities cited are inapt.

Both instructions, and particularly the latter, are in conflict with the well established rule or principle of homicide, that if after a mortal blow or wound is inflicted by one person another independent responsible agent in no way connected in causal relation with the first, intervenes and wrongfully inflicts another injury, the proximate cause of the homicide, the latter and not the former is guilty of the murder. Wharton on Homicide, sections 28-33; 1 Wharton Cr. Law, section 160. The rule is different where the agent so interposing is irresponsible. 1 Wharton Cr. Law, section 161; Wharton on Homicide, section 37. The rule violated is the same where the negligence of a responsible agent intervenes to cause the death, as in the case of surgeons, but not if death results from

proper surgical or medical aid, for death resulting immediately from that cause is one of the consequences of the previous unlawful act, and does not excuse the one responsible therefor. Wharton on Homicide, section 35; 1 Wharton on Cr. Law, section 157. The rule respecting the intervention of an independent responsible agent has been applied where death resulted immediately from a self-inflicted injury, or from suicide. Wharton on Homicide, section 33, citing *Lewis* v. *Com.*, (Ky.) 42 S. W. 1127.

Instruction 9, moreover, violates another rule of homicide, that the intervening responsible agent who wrongfully accelerates death is guilty of the murder and not the one who inflicted the first injury though in itself mortal, the law being that the one who thus hastens the death of another himself becomes the intervening agent and proximate cause of the death. Mr. Wharton says: ''And one whose wrongful act hastens or accelerates the death of another, or contributes to its cause, is guilty of homicide, though other causes co-operate.'' And he adds pertinently to the proper theory of this case, we think: ''And he is guilty if his act was the cause of the cause of the death.'' Wharton on Homicide, section 27.

Number 13, furthermore, is rather inconsistent within itself. In the first place it presupposes a *mortal* wound inflicted by defendant and if guilty thereof, that defendant is guilty of first degree murder, *provided,* this mortal shot contributed mediately or immediately to Shaver's death, though the jury should find he would not have died from the mortal blow of defendant had not other causes operated with it. The only evidence of other cause or causes of death to which the instruction could have referred was the evidence of the self-inflicted wound by Shaver. If defendant's ''mortal wound'' would not have resulted in death, except as co-operating with the intervening act of deceased, defendant could not, upon the principle of a supervening responsible agency, above referred to, have been found guilty of murder. Besides this inconsistency the instruction was cloudy and misleading.

On the evidence before the jury at the trial, the proper theory of the State's instructions should have been a mortal wound by defendant, and that the self-inflicted injury by

deceased, though it may have been the proximate cause of death, was not the act of an intervening responsible agent, but of one rendered irresponsible by the wound inflicted by defendant, and as the natural result of that wound, the causing cause of the immediate death of deceased.

Because of these erroneous and misleading instructions we are of opinion to reverse the judgment and award the prisoner a new trial.

*Reversed and New Trial.*