# CHARLESTON.

WILLIAM P. HUBBARD *v.* EQUITABLE LIFE ASSURANCE SOCIETY
OF THE UNITED STATES.

Submitted January 18, 1921.   Decided April 5, 1921.

1.   APPEAL AND ERROR—*Refusal to Remand to Rules for Process on Amended Declaration Not Error, Where Damages Less Than in Original Declaration Found.*

A case, after being remanded from this court for a new trial, was sent to rules on plaintiff's motion and an amended declaration filed at August rules, which increased the ad damnum only, but on which amended declaration no process was issued; at the following October term defendant appeared and moved to remand the case to rules for process on the amended declaration, which motion the court overruled, and gave the defendant a rule to plead, and thereupon a demurrer to the amended declaration was interposed, and a motion made

to strike certain items from the bill of particulars. The demurrer was overruled, and the motion denied. At the following January term the issues were made up and the case tried by a jury, which found for the plaintiff in an amount less than the damages laid in the original declaration. Held: It was not reversible error to refuse the motion to remand the case to rules for process on the amended declaration. (p. 364).

2. INSURANCE—*Other Policies Held Admissible on Construction of Loan Agreement in Policy.*

Where a life insurance policy has been issued with an agreement therein to loan a certain sum to the insured at a fixed rate of interest for a stipulated time, with the policy assigned to the insurer as collateral, and with the provision that upon payment of the interest on the loan, and payment of the premiums on the policy as each becomes due and payable, then the borrower has the option to continue the loan from year to year until maturity of the loan; and the insurer refuses to make such loan otherwise than upon a stipulation waiving notice of intention to cancel the policy upon failure to repay the loan on the date when due, and giving the insurer the right to apply the cash surrender value of such cancellation to the payment of the loan and interest; and the policy-holder will not agree to such stipulation unless there is a clause therein to the effect that he shall have at least thirty days notice of intention to cancel the policy for default in payment of the loan on the day when due, and litigation arises as to the proper construction of the loan agreement of the policy; the policies subsequently issued by the insurer, both before and after said litigation has begun, which define the conditions upon which it will make loans to its policy-holders, and which provide for a notice of thirty days of intention to cancel the policy upon failure to pay the loan when due, are inadmissible in evidence as tending to prove the reasonableness and practicability of the policyholder's construction of the loan agreement in the policy upon which the suit is instituted. (p. 368).

3. NEW TRIAL—*Verdict Will Not be Disturbed for Improper Evidence Where Jury Has Disregarded it.*

If immaterial or improper evidence has gone to the jury in the progress of the trial, and the court fully instructs the jury that its verdict can be predicated only on a theory which is sustained by proper, relevant and material evidence, and the verdict is responsive to the court's instructions, and it

is clear that the jury has disregarded the immaterial or improper evidence, the verdict should not be disturbed for that reason. (p. 367).

4. APPEAL AND ERROR—*Setting Aside Verdict for Improper Evidence Which is Not Prejudicial Reversible Error.*

Where improper or immaterial evidence is admitted and it clearly appears from the whole case, including the court's instructions to the jury, that it could not have produced a different result, and had it been excluded the result would have been the same, it will be reversible error to set aside the verdict on that ground alone. (p. 367).

Error to Circuit Court, Ohio County.

Action by William P. Hubbard against the Equitable Life Assurance Society of the United States. Verdict for plaintiff was set aside, a new trial granted, and plaintiff brings error.

*Reversed and rendered.*

*J. Bernard Handlan* and *G. Alan Garden,* for plaintiff in error.

*Frank W. Nesbitt,* for defendant in error.

LIVELY, JUDGE:

This case was before this court on error in January, 1918, and is reported in 81 W. Va. 663. A terse statement of the controversy is there given. It is unnecessary to make a repetition here. A construction of the loan clause in the policy was the main contention on the first trial and in this court. The judgment was reversed and the case remanded because of improper evidence given to the jury. This court decided that the insured, upon being refused a loan, as provided in the loan clause of the policy, upon proper terms, and who then obtained loans elsewhere, upon collateral security of his own, at a higher rate of interest than that set out in the policy, but at the lowest rate obtainable, was entiled to recover the excess of the interest so paid by him over that provided for in the loan clause of the policy, and the reasonable value of his services in securing the loan; but was not entitled to compensation for the use of his securities, used as collateral. Much of the same evidence used at the first trial

was necessarily introduced at the last trial, and the main controversy now centers about the admissibility of the evidence submitted to the jury relating to the value of the services of the plaintiff in error in securing a loan of $17,680.00 from various sources, which sum was the amount he was entitled to borrow from defendant under the loan clause in the policies, at 5% for a period of years, under certain conditions, with assignment of the policies as collateral. A verdict of $1,822.83 was rendered, January 14, 1919, in favor of the plaintiff, and, on motion of defendant, the court, being of the opinion that improper evidence had been introduced, set aside the verdict and granted a new trial, and the plaintiff obtained this writ of error and supersedeas.

At the inception we are confronted with a question of pleading and practice. Upon remand of the case by this court, plaintiff, without notice to defendant and in its absence, successfully moved the circuit court to remand the case to rules, and at August rules, 1918, an amended declaration was filed in the clerk's office on which no process issued. On October 12, 1918, defendant appeared specially and moved the court to again remand the case to rules, because of want of notice, and want of process on the amended declaration. The motion was denied and overruled and exception taken. The defendant in error assigns this ruling of the court as cross error. The amended declaration only increased the ad damnum. It did not change the form of the action nor the subject matter of the controversy, and could have been permitted by the court at bar. We can see no injury or prejudice to the defendant by this amendment thus accomplished. It was not taken by surprise. The case was not tried until January 13, 1919, when the verdict returned was for less than the amount laid in the original declaration and writ. Wherein has the defendant been injured? *Dabneys* v. *Knapp*, 2 Gratt. 354.

The controlling question in this record is upon the admissibility of the plaintiff's evidence introduced to show the value of his services in obtaining loans from sources other than the insurance company. What was the value of his

services? It is clear that the excess interest (1%) which plaintiff paid on the amount of loans to which he was entitled, to-wit, $17,680, and which loans he obtained from various sources, amounted to $595.23, at the time suit was begun. On this sum he was entitled to interest at 6% until the date of judgment, which would add thereto $202.52, making in all $803.75. The verdict was for $1822.43, leaving the sum of $1019.08 to be accounted for as the value of the services of the plaintiff. Our former decision was that plaintiff could not recover for the use of his own securities used by him as collateral in securing the various loans from the banks. Is there sufficient legal evidence to prove that plaintiff's services, time and expense in procuring and continuing these various loans were worth $1019.08? That is the vital question. Witness Tucker testified that the fair compensation of a person in obtaining a loan of $17,680 on good collateral security such as Pennsylvania Railroad stock, Wheeling Steel & Iron Co. stock, and other good stock (all being the stock actually pledged by plaintiff) for a year with the privilege of extending the loan at the end of the year, for another year, at the option of the borrower, and at the end of the second year for another year, and so on, for three years more, obtaining the amount in as many as 40 different loans, and looking after 12 renewals, requiring two trips to Washington, Pa., the entire transaction covering a period from March, 1911, to January, 1915, would be 5% of the loan; and witness Mathison said such service ought to be worth $700 or $800. The plaintiff valued such services at $1000. On the former trial he estimated his services, time and expenses as worth $500, under the assumption that it had taken 30 transactions, but which he afterwards found to be 40 transactions. In comparing his services with that charged by brokers for like services, under like conditions, he finds that the estimate given in this former evidence not based on a percentage, was too small. The loan clause in the policies provided that after the policies were three years old the holder at his request would be loaned certain specified sums at 5%, renewable each year for five years, with the poli-

cies as collateral security. The defendant failed to comply with this loan contract, and the plaintiff procured loans elsewhere, amounting to $17,680, at 6%, using his own collateral as indicated in the hypothetical questions propounded to witnesses Tucker and Mathison. Upon a calculation of the interest on the average of the value of the services in securing these loans as fixed by these witnesses, and adding thereto the undisputed sum of $803.75, the result will be a few dollars in excess of the verdict. The evidence of these three witnesses is not contradicted. So, if all of the evidence tending to fix a value for the use of the collateral owned by him and pledged to secure these loans be eliminated, there is sufficient evidence to sustain the verdict. Instruction No. 2, offered by the defendant and given, took out of the case any consideration of the use of such securities as an item of damage to the plaintiff. The learned trial judge was of the opinion that inasmuch as evidence had gone to the jury, over the objection and exception of the defendant, as to what would be the value of services in procuring loans on the insurance policies, on the terms set out in the loan clause, and for the time in which the policies had to run, the defendant was prejudiced thereby, because the plaintiff did not render such service, and the verdict was set aside and a new trial awarded for this reason. And yet instruction No. 7 given for the defendant told the jury that in computing the value of plaintiff's services in procuring the loan, the basis thereof must be the value of his services in procuring the loan on the collateral actually used, and not the value of such services as he would have rendered if he had procured the loan on the insurance policies. This instruction practically told the jury to disregard this evidence which had gone in, and which the court after verdict considered to be error. There was a persistent effort on behalf of the plaintiff to get before the jury evidence on which it could base an item of compensation to him for the use of his securities pledged as collateral in securing these loans, although this court had said that no recovery could be had for the use of such collateral securities; and the court, likewise, in order to remove any impression which such attempt might have had, instructed

the jury that no compensation could be allowed for the use of such securities, in defendant's instruction No. 2.    It is clearly the duty of the court to instruct the jury to disre- gard evidence improperly admitted.    *Moore* v. *Harper,* 42 W. Va. 39; *Alderson* v. *Miller,* 15 Gratt. 279; *Brooks* v. *Calloway,* 12 Leigh 466.    The introduction of improper evidence in jury trials frequently occurs, and the court, upon perceiving it, will instantly instruct the jury to disregard it. A formal written instruction would be as effective.    The in- struction to disregard purges the error.    A jury must be pre- sumed to possess some discrimination and recollection.    A close inspection and study of the evidence given by witnesses Holloway, Mathison and Marshall will disclose that they did not express any satisfactory opinion on the value of services in securing a loan on the terms set out in the loan clause, with the policies pledged as collateral security therefor. The general tenor of their evidence was to the effect that it would be difficult to negotiate such loans with the life policies as collateral.    Plaintiff's theory for introducing this evidence is that it was for the purpose of showing that he did not use these policies in obtaining the loans because of the diffi- culty in getting the banks to make loans thereon, and the possible higher rate he would have to pay because of the unusual and unsatisfactory security offered; and that he took the better, quicker and cheaper way of using his own well known and acceptable stocks.    In this way he minim- ized the damages.    It is unnecessary to determine whether this evidence was proper or not, or on what theory, if any, its introduction was justified, as the jury was instructed to disregard it in considering its verdict.    We are inclined to hold that this evidence was proper for the purpose of showing why plaintiff could not pledge the policies.    From this record we cannot see that defendant was prejudiced by this alleged improper evidence.    *Hall* v. *Lyons,* 29 W. Va. 410.

We can see no error in the court's action in refusing to strike out that clause of local manager Sweeney's letter of April 8, 1911, to the defendant, which letter informed it that plaintiff criticised the loan agreement based on the policy and

would not sign it as prepared, and which clause stated that the loan agreement ''had been a great deal complained of and criticised on the part of certain policyholders.''    This court had already held that the loan agreement insisted on by the defendant was a departure from the policy contract.    The reasonableness of the loan agreement was involved, and this evidence of complaint from policyholders only accentuated what had been judicially settled, and could not prejudice defendant's case.    Nor can we see injury to the defendant in submitting to the jury excerpts from the subsequent annual reports of the defendant to its policyholders relative to the value and desirability of its liberal policy contracts. Defendant's counsel insists that this evidence was designed to secure punitive damages, on what hypothesis we fail to perceive, but if such evidence could, under any theory, be construed to have that effect, instruction No. 3 given for the defendant told the jury that punitive damages could not be given; and its instruction No. 1 limited the recovery to excess interest paid by plaintiff and reasonable compensation for his time, services and expense in procuring the loans, together with interest on these amounts.    We do not perceive any puntive damages in the verdict.  .

After this suit was begun on the policies issued in 1901, a policy was issued on November 26, 1915, to plaintiff which contained a loan provision similar to that contended for by plaintiff, to-wit, that upon default the policyholder should have thirty days notice before forfeiture was declared. This policy was properly put in evidence to prove the reasonableness of plaintiff's contention as to his construction of the 1901 policy contract.    The later policy admitted, almost in terms, that plaintiff's construction of the contract sued on was reasonable and practicable.    Defendant insists that the court erred in admitting evidence as to the value of plaintiff's services in obtaining forty different loans, when he testified that he could have borrowed the entire amount at one time on his name and first class collateral used; that it was plaintiff's duty to minimize the damage caused by the breach in this way.    Plaintiff during this time needed much more money than that provided for in the policies, varying from

a few thousand dollars up to $100,000.    The average of his borrowing during the period was $50,000 or $60,000.  ' He borrowed the money as his necessities required.    At one time he borrowed the money for a period at 5%, saving  the excess interest to defendant for approximately six months. It must be kept in mind that defendant's contract was to loan a stipulated amount, $17,600, to plaintiff at 5% for one year with the option to plaintiff to renew at the end of the year, and to continue to renew at his like option for five years, a most advantageous contract to plaintiff; should interest rates go beyond 5% his contract rate remained, and should the rate become less than 5% he could exercise his option and discontinue his loan.    It would be difficult to obtain  that amount of money in a lump sum under such a contract, especially with the policies as collateral.  ' Some of the brokers say that they would not undertake to negotiate such a loan, deeming it practically impossible to do so. We do not think that plaintiff, being required to go into banks for this money on short time loans secured by his own collateral, would be required  to borrow in a lump sum, whether he then needed all the money or not, in order to minimize the defendant's damages.    He was borrowing various sums from various sources during that time to meet his varying necessities, totalling possibly one hundred transactions.    A person usually borrows money as and when he needs it. The plaintiff would not be required to depart from his usual ordinary and prudent methods in order to minimize defendant's damages.    Therefore, defendant's instruction No. 6, which told the jury that if they believed the plaintiff could have procured the $17,680 loan in one transaction, then it was his duty so to do, and the basis of his recovery for time, service and expense should be computed on the one transaction, was properly refused.

It is insisted that plaintiff is not entitled to recover more than the excess interest he was compelled to pay.    This contention was considered and passed upon on the former writ of error, and will not be considered again.    We then held that the reasonable value of plaintiff's services in procuring the loans elsewhere was a proper item of damage.

*Hubbard* v. *Assurance Society,* 81 W. Va. 663.    Defendant's instruction No. 5, given, told the jury that plaintiff's compensation for time, labor and expense in obtaining the loans from others to take the place of the sum contracted to be loaned by it, should be limited to that which was reasonably necessary, thus negativing its own contention now made that excess interest was the only item of recovery.

Much argument and citation of authorities is contained in the brief for plaintiff on the proposition that he should be compensated for the use of his collateral used to take the place of the insurance policies; and much argument and citation is found in the brief for plaintiff to sustain its contention that plaintiff's recovery should be limited to the excess interest paid, and no account whatever taken of his time, expense and service in obtaining the loans. These respective contentions were decided when this case was formerly before this court, and that decision now governs.

As above stated, the controlling question presented by this record is the value of plaintiff's time, service and expenses in obtaining these loans.    The uncontradicted testimony of plaintiff and witnesses Tucker and Mathison is sufficient to warrant a verdict in excess of that returned, taking into consideration the agreed item of interest paid.    Even if the evidence of the other brokers on this question could be considered as improper, or confusing, (although the jury was practically instructed to disregard it and had been stricken out, we fail to perceive that a different verdict could have been rendered.    Wherein will a new trial avail the defendant?    It would only prolong the litigation and entail more costs.    *Taylor* v. *B. & O. Ry Co.,* 33 W. Va. 39; *Insurance Co.* v. *Trear,* 29 Gratt. 255.

We reverse the judgment of the circuit court which sets aside the verdict, reinstate the same, and render judgment thereon.

*Reversed and rendered.*