## B. F. BYRD v. VIRGINIAN RAILWAY COMPANY

(No. 9133)

Submitted January 21, 1941. Decided February 18, 1941.

48

*Walter C. Plunkett, John R. Pendleton* and *Kingdon & Kingdon,* for plaintiff in error.
*Worrell & Worrell,* for defendant in error.

Lovins, Judge:

The Virginian Railway Company appealed to the Circuit Court of Wyoming County from an adverse judgment of a justice of the peace in favor of B. F. Byrd. The action was based upon the destruction of two cows and the crippling of another by one of defendant's passenger trains. On appeal, judgment was entered by the circuit court upon a jury verdict for Byrd in the amount of $200.00 and costs, and to that action of the court below,

the Railway Company prosecutes this writ of error. The following facts appear.

On January 29, 1940, at about one o'clock in the afternoon passenger train No. 4 was proceeding eastward in the direction of Mullens, in the vicinity of Pierpont in Wyoming County. Coming out of a right curve through a cut in the hillside, the engineer's view, from his position on the right side of the engine cab, was obstructed somewhat by the hillside on his right; however, according to his testimony, he observed some ten or twelve cattle along a sidetrack on his right and some distance ahead. Plaintiff's witnesses estimate the distance to the cattle from the engineer's first point of observation at from four hundred to eight hundred feet. Plaintiff's witness, Beavers, who was riding on the right side of the first passenger coach, testified that when the engineer reached the point where his view was unobstructed that some ten or fifteen cattle were "angling" across the sidetrack and main line thereof at the time the front of the engine was from three hundred to three hundred fifty feet away. Engineer Akers made a service application of the brakes while still on the curve thereby reducing the speed of the train from about thirty miles per hour to about five miles per hour. When the cows disappeared from his view, and, in answer to his inquiry, the fireman had said he could see none, Akers increased the speed. Upon signal from the baggage car, he stopped the train within about one hundred and fifty feet, and found three cows had been struck; two were killed and the third injured after having been dragged, in the estimate of plaintiff's witnesses, from two hundred to five hundred feet before the engine came to a stop.

W. L. Blevins, a former fireman for the Railway Company, who had left its employment about 1923, testified for the plaintiff as an expert witness on the operation of railroad engines. After stating his experience with the operation of engines of freight and work trains and his familiarity with the particular section of the road where the cows were struck, he was asked this question: "Tell the jury, Mr. Blevins, in what distance a passenger train

could have been stopped at the point where those cows were killed?" The trial court overruled this objection: "Objection, because there is nothing stated about the speed of the train and the witness is not qualified as a passenger engineer." Thereupon the witness answered: "Well, I would say anywhere from three to four hundred feet on a grade like that is there by making an emergency application of the brake." On cross-examination, Blevins testified that he had operated a passenger train on one occasion only and that he knew neither the number of coaches on No. 4 nor its speed at the time of the accident. There was no other testimony for the plaintiff bearing on this point.

The assignments of error made by the Railway Company are based upon the failure of the lower court to sustain the objection to the question herein quoted.

We are of the opinion that the witness Blevins was qualified as an expert on the question of the distance within which a passenger train could be stopped. Generally, such question is a proper subject for expert testimony. *Norfolk Ry. & Light Co.* v. *Corletto,* 100 Va. 355, 41 S. E. 740; Lawson on Expert Testimony, Second Edition, p. 92; *El Paso Ry. Co.* v. *Havens* (Tex. Civ. App.), 216 S. W. 444; *Wimsatt's Adm'x* v. *L. & N. R. Co.,* 235 Ky. 405, 31 S. W. (2d) 729.

Trial courts have been accorded wide discretion in permitting a witness to testify as an expert. "The rule seems to be that an expert need not have all the knowledge possible for one in his class to entitle him to speak but may testify unless it clearly appears that he is not qualified at all." *State* v. *Brady,* 104 W. Va. 523, 140 S. E. 546, 550, citing *Richmond Locomotive Works* v. *Ford,* 94 Va. 627, 27 S. E. 509; Lawson, *supra,* p. 250. However, some qualification as an expert must affirmatively be shown. Under this broad rule, Blevins probably qualified by showing his experience of seven years as a fireman for the defendant railroad and his occasional operation of trains thereon. Further, the judgment of the trial court as to the qualification of an expert witness will not be reversed unless it clearly appears that the witness

was not qualified. *State* v. *Brady, supra; Richmond Loco-motive Works* v. *Ford, supra;* Lawson, *supra,* p. 276.

Generally speaking, questions propounded to expert witnesses, seeking to elicit an opinion, should contain a hypothesis. The reason for this rule of hypothetical presentation is well stated in section 683, Wigmore on Evidence, Third Edition: "Policy as well as principle, require that the form of the question be expressly hypothetical; because otherwise the jury, and perhaps the witness may be misled by the statement, as proved or admitted fact, of that which is as yet only an assertion of counsel or of witnesses. But this requirement is capable of being insisted upon with finical and injurious exactness. The harm from its violation can seldom be serious, and Courts should not find fault with omissions to use a formal hypothetical statement where the jury could not have been misled. The question need be only substantially, not in exact form, hypothetical."

Although "all opinions or conclusions are in a sense hypothetical," Wigmore, section 675, *supra,* the question in the form used herein, was not, in our opinion, even substantially hypothetical, under the liberal rule as stated by Wigmore in section 683.

By the holding in the case of *McMechen* v. *McMechen,* 17 W. Va. 683, 41 Am. Rep. 682, a clear and full statement of all material facts was required in a hypothetical question. In the case of *Kerr* v. *Lunsford,* 31 W. Va. 659, 8 S. E. 493, 2 L. R. A. 668, and succeeding cases decided by this Court, the rule has been modified. We do not believe further changes should be made. As we understand the rule at this time, such questions need not cover all the facts, even undisputed facts, but counsel may assume facts fairly inferable from the evidence, which tend to support their theory of the case. *Bowen* v. *Huntington,* 35 W. Va. 682, 14 S. E. 217; *State* v. *Cook,* 69 W. Va. 717, 72 S. E. 1025; *State* v. *Angelina,* 73 W. Va. 146, 80 S. E. 141, 51 L. R. A. (N. S.) 877; *Fairview Fruit Co.* v. *Brydon & Bro.,* 85 W. Va. 609, 102 S. E. 231. The expert witness may base his opinion partly upon his knowledge of the subject matter and partly upon hypotheses stated in the ques-

tion. *Phenix Fire Ins. Co.* v. *Power Co.*, 81 W. Va. 298, 94 S. E. 372.

When such a question in the judgment of opposing counsel omits essential facts proven or which the evidence tends to prove, those facts must be specified in the objection or introduced into the question upon cross-examination and an opinion obtained on the facts thus presented. *Keenan* v. *Scott*, 78 W. Va. 729, 90 S. E. 331; *Adams* v. *Murphy Co.*, 115 W. Va. 122, 174 S. E. 794; *Hazelrigs* v. *Huntington*, 116 W. Va. 757, 182 S. E. 877.

However, the question asked was obviously improper in its failure to specify speed and other conditions peculiar to this class of expert testimony. Because of the technical nature of the testimony involved, courts should exercise care, where timely and sufficient objection is made, to make certain that all necessary facts and circumstances are considered by the witness when estimating the distance within which a train could have been stopped. "The opinions of those possessing special knowledge and experience respecting railroad machinery and railway management are admissible as to such matters as the following: * * * the distance within which a train can be stopped, the rate of speed and other facts being known, * * *." Jones on Evidence, section 381. *Watson* v. *Railway Co.*, 53 Minn. 551, 55 N. W. 742; *Capital Traction Co.* v. *Contner*, 120 Md. 78, 87 A. 904. "The speed at which a train was moving or within what distance it could be stopped are questions of actual facts and expert testimony thereon can under no circumstances be introduced unless based upon the operation of cars or engines of similar construction and equipment and under like conditions." *Wise Terminal Co.* v. *McCormick*, 104 Va. 400, 51 S. E. 731, 734; *Richmond Passenger Co.* v. *Racks' Adm'r.*, 101 Va. 487, 44 S. E. 709.

Plaintiff in error made a timely objection based upon the specific ground of the failure to include the speed of the train, a most important fact in the formation of an opinion as to the distance in which a train, or any moving vehicle for that matter, can be brought to a stop. While the objection leaves something to be desired in specifying

omitted facts, we believe it is sufficient, and the trial court erred in failing to sustain the same.

Because there was no other expert testimony offered by plaintiff on the particular point, we must presume that the plaintiff in error was prejudiced by the improper ruling of the trial court on the objection interposed to the question seeking an opinion from witness Blevins. It does not clearly appear from the competent evidence in the record that the trial court would have been justified in setting aside a verdict for defendant. *Hall* v. *Lyons,* 29 W. Va. 410, 1 S. E. 582; *Reilly* v. *Nicoll,* 72 W. Va. 189, 77 S. E. 897, 47 L. R. A. (N. S.) 1199; *Hubbard* v. *Assurance Soc.,* 88 W. Va. 361, 106 S. E. 786.

Therefore, the judgment of the Circuit Court of Wyoming County is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

> *Judgment reversed; verdict set aside; new trial awarded.*